# HENRY B. LITTLE & others, trustees, vs. CITY OF NEWBURYPORT.

Essex.    November 9, 1911. — January 2, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Charity*, What constitutes benevolent or charitable institution, Exemption from taxation. *Tax*, Exemption.    *Trust.    Young Men's Christian Association.*

At the hearing of an action of contract in which was involved the question, whether the property of the Young Men's Christian Association of Newburyport was taxable, there was evidence tending to show that the association was a corporation without capital stock; that its purpose, as stated in its charter and constitution, was "the improvement of the spiritual, mental, social and physical condition of young men;" that its membership was made up of "active" and "associate" members; that any man above fifteen years of age who was a member in good standing of a Protestant Trinitarian church might become an active member; that only active members had a right to vote or to hold office; that any man over fifteen years of age of good moral character might become an associate member and enjoy all the privileges of the association other than voting and holding office; that the extent to which members might use some of the privileges of the association depended upon the amount of membership fee they paid; that there was no religious test applied to associate members and they included persons of the Roman Catholic and of all Protestant denominations as well as Jews and persons of no religious preference; that the association had a definite policy of religious work not confined to its members nor to its building, carried on considerable educational work, also not confined to members, with classes in fifteen or twenty different studies for which was charged a small fee insufficient to sustain the work; that there were classes for Polish residents of the city, both men and women, where no fee was charged and general instruction in elementary matters of clean living and good citizenship was given; that a reading room was maintained; that there were meetings for social purposes, entertainments, games, public receptions and sometimes shop receptions where men from different factories were entertained without cost to them; that some work was done which was charitable in the popular meaning of that word, mainly to assist young men, both members and non-members; that none of the work was done for profit; that no officer except the secretary received any compensation; and that the association depended for support for its work mainly upon subscriptions. *Held*, that the corporation was a benevolent or charitable institution within the meaning of those words in St. 1909, c. 490, Part I, § 5, cl. 3, the fact that some of its benefits were afforded only to its members, and the limitation of the privileges of becoming "active" members, of voting and of holding office not being material.

A fund, bequeathed to trustees for the purpose of paying the net income thereof "for the general purposes" of a Young Men's Christian Association which is a benevolent or charitable institution, is exempt from taxation under the provisions of St. 1909, c. 490, Part I, § 5, cl. 3.

CONTRACT for $120.31, the amount of a tax and of costs assessed as of April 1, 1910, upon personal property in the possession of the plaintiffs as trustees under the will of Daniel S. Burley, and paid by them under protest. Writ dated November 16, 1910.

In the Superior Court the case was heard by *Schofield*, J., without a jury.

It appeared that the property upon which the tax was assessed was a fund of $10,000 bequeathed to the plaintiffs in trust to pay the net income thereof to the Young Men's Christian Association of Newburyport "for the general purposes of said Association." That association was incorporated in 1884 under Pub. Sts. c. 115, its charter and constitution stating its purposes as they are stated in the second paragraph of the opinion. It owns and alone occupies a building which was a memorial gift to it.

There was evidence tending to show the facts stated in the opinion. At the close of the evidence the defendant asked the judge to rule " that upon the law and all the evidence, judgment must be entered for the defendant."

The judge refused so to rule and found for the plaintiff for $124.65. The defendant alleged exceptions, which, after the resignation of *Schofield*, J., were allowed by *Raymond*, J.

*A. Withington*, for the defendant.

*E. Foss*, for the plaintiffs.

SHELDON, J. It may be scarcely possible under our statute (R. L. c. 12, § 5, cl. 3; St. 1909, c. 490, Part I, § 5, cl. 3) to lay down a general rule as to the character of the Young Men's Christian Associations which have now become so numerous. In each case the question will be whether the institution is in its character literary, benevolent, charitable or scientific within the meaning of those words in the statutes; and the answer will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration.

The purpose of this association is " the improvement of the spiritual, mental, social and physical condition of young men." The provisions of its constitution and by-laws, so far as they are shown, are designed and adapted to accomplish that purpose. Its membership is made up of active and associate members.

Any man above the age of fifteen years who is a member in good standing of a Protestant Trinitarian church may become an active member, and no others have the right to vote or hold office. Any man above the same age of good moral character may become an associate member and enjoy all other privileges. Each of these classes is subdivided into sustaining members, those who contribute at least $10 a year; unlimited members who pay $5 year and have all the privileges of the association; and limited members, who are not allowed to use the gymnasium and some other means of amusement of the association. Boys in the public and parochial schools are allowed full privileges upon payment of a smaller annual fee. There is no religious test applied to the associate members, and these include Roman Catholics, Jews, and all shades of religious preferences among Protestants, while many of them have no religious preference at all.

The association has a definite policy of religious work, which is stated with some detail in the exceptions. This is not confined to the members, and includes services in different schoolhouses and churches. It is an expense to the association.

It carries on considerable educational work, having maintained classes in fifteen or twenty different studies. In these a small fee is charged to pay for the hire of the teacher, the deficit being made up by the association. This work also is not confined to the members. It is done usually at a loss, never with a profit. There was testimony that " the association has tried to do more educational work than was apparently demanded. For instance, we have tried to do work for the shoe workers. We have had representatives from the silver factory and from all the shoe shops, and have had talks with them to try and improve their conditions. The association is always willing to do that work if they can get four, five or six men to join the classes. . . . There has not been a demand for the bookkeeping classes and writing classes and English classes. We have considered that every year, and provided the facilities, but have not had the response." The association has conducted classes in English for the Polish residents of Newburyport, both men and women. The city furnishes wardrooms for this purpose, and all Poles are invited to come. They are taught by volunteers, and no fee is charged to the

pupils. They are also given talks on hygiene, civics, government, history and elementary mathematics; are given advice on the way to become citizens and upon other matters. There is also teaching in physical education, rowing, swimming, etc.

A reading room is maintained, which is open to the public.

There are also held meetings for social purposes, entertainments and games, public receptions, and sometimes shop receptions, wherein men from different factories are entertained without cost to them.

Some work is done which is charitable in the popular meaning of that word, mainly to assist young men, both members and non-members.

None of the work is done for profit. The association has no capital stock. None of its officers except its secretary receives any compensation. · It depends for the support of its work mainly upon subscriptions.

It will be seen that this is not an almsgiving organization. But that is not decisive of the question raised. Charity in the legal sense " is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man." Braley, J., in *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342. The association carries on a work which is intended and adapted for the improvement and elevation of young men, not only to bring them under good influences, but to promote their moral, mental and physical welfare. It incurs expense for this purpose, for meeting which it relies mainly upon charitable contributions. In its essence, though not giving charity in the narrow sense of that word, it is a benevolent or charitable institution within the meaning of those words in the statute. *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, 435. *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139. *Molly Varnum Chapter, D. A. R.* v. *Lowell*, 204 Mass. 487. *New England Sanitarium* v. *Stoneham*, 205 Mass. 335.

The fact that some of the benefits of the association are afforded only to its members is not material under the circumstances now presented. The element of indefiniteness in the recipients of a bounty is of course essential to the character of a public charity. But the privilege of membership is open to all upon

payment of a moderate fee, without any other restriction than what has been stated as to sex and age. This of itself would be sufficient to meet the requirement. The limitation of the right to vote and hold office is not material. *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432. *Sherman* v. *Congregational Home Missionary Society,* 176 Mass. 349. *Masonic Education & Charity Trust* v. *Boston,* 201 Mass. 320. Moreover the judge at the trial could find that the dominant purpose of the association was its work for the public good, and that the work done for its members was the means adopted for this purpose rather than the end finally aimed at.

The requirement of small annual fees is not decisive. That has been held in our former decisions. *Gooch* v. *Association for Relief of Aged Indigent Females,* 109 Mass. 558. *Franklin Square House* v. *Boston,* 188 Mass. 409, 410. *Thornton* v. *Franklin Square House,* 200 Mass. 465. *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, 342.

There is nothing in *Chapin* v. *Holyoke Young Men's Christian Association,* 165 Mass. 280, inconsistent with our conclusions. That decision was made, as always must be the case, upon the facts that had been proved. Whether the defendant in that case could have shown the same facts that appear in this case cannot now be known. But it is worth noticing that in that case the defense set up would have failed in any event, as is shown by the cases there cited.

That this fund was in the possession of trustees is not a material circumstance. *Watson* v. *Boston,* 209 Mass. 18.

Under somewhat similar facts, a decision like ours has been made in other States. *Commonwealth* v. *Young Men's Christian Association,* 116 Ky. 711. *Philadelphia* v. *Women's Christian Association,* 125 Penn. St. 572.

There was no error in the refusal to rule that the defendant was entitled to judgment.

*Exceptions overruled.*