LOUISE HAMBURGER, Plaintiff, *v*. CORNELL UNIVERSITY, Defendant.

(Supreme Court, Saratoga Special Term, April, 1917.)

Negligence — action to recover for personal injuries — waiver — pleading.

In an action brought against Cornell University by a duly enrolled student in its Agricultural College, to recover for personal injuries sustained in consequence of the explosion of a mixture of chemicals in a glass tube, while she was performing a certain experiment in chemistry under the verbal instructions of one of the instructors, defendant should be protected or held liable by the same rules of law as are charitable institutions, and the waiver of any liability of the defendant for negligence, implied from the relation between it and plaintiff, precludes a recovery.

The complaint herein considered, and demurrer thereto, on the ground that it fails to state a cause of action, sustained.

DEMURRER to complaint.

Nash Rockwood (H. P. Pendrick, of counsel), for plaintiff.

Mynderse Van Cleef (O. L. McCaskill, of counsel), for defendant.

VAN KIRK, J. This is a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The complaint attempts to state a cause of action in negligence as follows: The defendant is a domestic corporation; in October, 1915, the plaintiff went to Cornell University, paid the matriculation fee of five dollars and the infirmary fee of three dollars, entering a course in the home economics department, which included a course or branch

called Chemistry One; she paid a laboratory fee of fifteen dollars and became a student in the university, taking the course Chemistry One; all the required chemicals and apparatus were furnished by the university and the professors and instructors were employed by the university; as a student she was entitled to the benefits and privileges of the university; in the afternoon of January 12, 1916, pursuing her work in Chemistry One, she was required to perform an experiment known as experiment 88, described in the text book then used, which consisted of combining or mixing two grams of mercuric sulphide with two grams of calcium oxide and heating the mixture in a glass tube, closed at one end; the defendant furnished the chemicals to the students in bottles bearing labels intended to show the contents thereof, from which bottles the students helped themselves to the necessary quantities; plaintiff took two grams from a bottle labeled calcium oxide, or powdered lime, but found no bottle labeled mercuric sulphide; pursuant to instructions she went to the stock room, where the attendant, a boy about fifteen years old, in charge of dispensing chemicals to students, and upon her request, gave the plaintiff two grams of some red chemical powder upon a piece of paper, which plaintiff believed was mercuric sulphide; plaintiff returned to her laboratory desk, mixed the two substances in a mortar, producing a mixture of reddish color; plaintiff, not knowing how to seal one end of the tube, asked Mr. Lake, the instructor, to seal it; Mr. Lake took the glass, sealed one end of it and handed it back to the plaintiff with instructions to put the powder into the tube; plaintiff put the mixture in the sealed tube, the instructor telling plaintiff it was not necessary to use all the mixture, watched her as she put the mixture in, told when she had enough in the tube; plaintiff then, according

to instructions, subjected the mixture to heat from a gas flame supplied by defendant as part of the laboratory equipment and in accordance with the written directions contained in the text book and upon the bulletin board in the laboratory and the verbal instructions of the instructor, whereupon the mixture exploded with great force, causing the injuries complained of.

The facts alleged are admitted, the conclusions of law are not.

The defendant contends that Cornell University is an eleemosynary institution and is exempt from liability in an action brought by an enrolled student against the university on account of the negligence of one of the instructors.

The court upon demurrer may take judicial cognizance of a public statute, under which certain legal presumptions arise. *Long Island R. R. Co.* v. *City of New York,* 199 N. Y. 303. By the Land Grant Act (Public Laws U. S., 1862, chap. 30, §§ 4, 5) the federal government set aside to each state moneys from the sale of public land, providing that it shall be invested and constitute a perpetual fund, the capital of which shall remain forever undiminished and the interest of which shall remain inviolably appropriated by each state to the endowment and maintenance of a college where the leading objects shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agriculture and mechanic arts in such manner as the state legislatures may provide. Any portion of the annual fund or interest lost by any contingency shall be replaced by the state, so that the funds shall remain forever undiminished.

The state of New York accepted the above gift, subject to the trust; and, after transferring the trust to

the People's College, chartered Cornell University for the express purpose of carrying out this trust. Laws of 1863, chap. 20; Laws of 1865, chap. 585; Laws of 1880, chap. 317; Laws of 1891, chap. 56; Education Law, §§ 1120–1129.

Cornell University is an educational institution, including various departments or colleges, one of which is the Agricultural college. It is supported by the above funds from the United States and by funds from the state of New York and by other endowments and gifts. It is also permitted to receive and does receive certain fees for tuition and other ends, all of which moneys are devoted to the educational purposes of the college.

In Webster's International Dictionary eleemosynary is defined: (1) '' Relating or devoted to charity, alms or almsgiving;'' (2) '' Given in charity or alms; having the nature of alms.'' Eleemosynary and charitable are in the law interchangeable. 10 Am. & Eng. Ency. of Law, 895. It is a settled rule of law that a charitable institution is not liable for the negligence of its physicians and nurses in the treatment of patients, upon two grounds: *first,* implied waiver. One who accepts the benefit of a charity enters into a relation which exempts one's benefactor from liability for the negligence of his servants in administering the charity. The second ground of the exemption is the relation subsisting between a hospital and the physicians who serve it. It is said that this relation is not one of master and servant, but that the physician occupies the position, so to speak, of an independent contractor. The hospital remains exempt, although the patient makes some payment to help defray the cost of board. *Schloendorff* v. *New York Hospital,* 211 N. Y. 128, 129; *Kellogg* v. *Church Charity Foundation,* 128 App. Div. **214.**

In many jurisdictions it is held that there is a complete exemption in favor of charitable institutions from liability for torts or negligence of their agents or servants, based upon the proposition that the funds of the institution are the subject of a charitable trust and cannot be diverted to another purpose or use; as in Illinois, *Parks* v. *Northwestern University,* 218 Ill. 385; but this doctrine does not prevail in the state of New York. *Hordern* v. *Salvation Army,* 199 N. Y. 233.

A sufficient reason why hospitals are not liable for the negligence of physicians and nurses is that a physician is not an employee or under the orders of the hospital and nurses are under the direction of such physicians.

The implied waiver by a patient extends to, and covers, all negligence on the part of the hospital and its employees in performing hospital duties, and all matters and acts in connection with the hospital and in the furtherance of its objects. In all jurisdictions, " It is recognized that the beneficiary of a charitable trust may not hold the corporation liable for the neglect of its servants. This is unquestionably the law of this state." *Hordern* v. *Salvation Army,* 199 N. Y. 237. The negligence mentioned in the decisions, the failure to use reasonable care in selecting employees for certain work, comes within this waiver. The reasons for upholding the implied waiver apply not only to the negligence of servants but to negligence in the failure to perform the duties of the master himself, which cannot be delegated. The law implies an intention on the part of the donors of the charitable funds that such funds shall be used for the charitable purpose only and implies an acquiescence in this intention by all persons who accept the benefits of the charity, and therefore the beneficiary waives any responsibility of the institution for negligence. *Kellogg* v. *Church Charity*

*Foundation,* 128 App. Div. 218. The objection then, based upon the implied waiver, protects the institution and its funds, and consequently it is a waiver of all claims of negligence, whether by the servants or by the institution itself. The fact that said negligence (in selecting servants) may be invoked and support liability under certain circumstances in actions against defendants conducting an enterprise of gift or kindness and without profit, involves a conclusion that there is a voluntary work in aiding and assisting others which does not come under the implied waiver. The rule has been applied in cases of ship surgeons. *Laubheim* v. *DeKoninglyke* N. S. M., 107 N. Y. 228; *Allan* v. *State S. S. Co.,* 132 id. 91, in which case a statute required the ship owner to provide medicines and a practitioner and where one has volunteered to furnish aid to another. I have read a number of cases suggesting that a charitable institution is not liable to a beneficiary for the negligence of an employee, if it has used reasonable care in selecting him, but no such case in which liability has been upheld on that ground. If it can be, no such negligence is alleged in this complaint.

Many decisions have held that colleges endowed for the advancement of learning are charitable institutions. Cases cited in *People ex rel. New York Inst. for Blind* v. *Fitch,* 154 N. Y. 31–33. But whether or not this is so, I am unable to appreciate any good ground why the reasons given for exempting a strictly charitable institution from liability to a patient for the negligence of its employees does not apply to such a college.

When the hospital is endowed and using voluntary gifts in its maintenance, the fact that it receives fees from some that pay, which fees are devoted to the same uses as its gifts, does not change the character of it

Supreme Court, April, 1917.          [Vol. 99.

as a charitable institution or the rules of its liability. *Cunningham* v. *Sheltering Arms,* 135 App. Div. 179. To hold otherwise would subject the endowment and the charitable gifts to depletion and involve a striking inconsistency. The defendant, endowed by federal, state and private gifts and aid, although it charges some fees to its students, bears in all essential respects the same relation to its students that the hospital bears to its patients. The student does not pay for what he gets. The college would be impossible without the gifts; it is organized and run to confer benefits upon the student and through him upon the public. Its benefits are not confined to the indigent, nor are those of the hospital, else payments would not be made by some.

The first reason given for exemption of such hospitals seems to apply in its full force. When a student enters the institution and accepts the benefit of the endowment, he enters into a relation which exempts the benefactor from liability for the negligence of its servants in administering the endowment and gift. The student, who has paid a small tuition or term fee or a special fee for a special course, seems to be in like position with a patient in the hospital who pays for bed and board.

We are not very definitely informed why the explosion occurred, whether because improper ingredients were furnished, or they were mixed in improper proportions or amounts, or the tube was not properly sealed at the end, or improperly handled, or the heat was excessive or allowed to reach directly the mixture. We may assume that, since the experiment was authorized, if properly conducted, no explosion would have followed. The explosion occurred and we are not informed why; one can guess only. An expert chemist alone could make a reasonable guess; and, if he could

make such guess, it would be only on knowledge of facts which he has, but which the complaint does not disclose. If the proof left a case in such condition, when the evidence was closed, the complaint would have to be dismissed. The plaintiff can prove only those facts fairly alleged. *Paterlini* v. *Memorial Hospital Assn.,* 229 Fed. Repr. 838; *Wright* v. *Delafield,* 25 N. Y. 266, 270.

The attorney for the plaintiff claims in his brief that the defendant was negligent in failing to use reasonable care in the employment of the boy; there is no such allegation in the complaint and no allegations on which such position could be maintained. The attendant at the supply room was a boy of fifteen years; it may be assumed that he was not a skilled chemist, but it does not appear that any one would know, from sight alone, mercuric sulphide; the boy apparently had only the duty of handing out from marked packages the articles called for; there are no allegations of the boy's duties or that defendant was negligent in employing him, or that the boy was negligent or did any wrong act or thing, and the complaint was evidently not framed with intent to charge such negligence. In such a case negligence will not be implied; it must be alleged and proved. Under the allegations of the complaint negligence on the part of the boy could not properly be proven, nor could negligence on the part of the defendant in employing him.

The complaint is in substantially the same condition as to the instructor, except that it is alleged that he supervised, assisted in and watched the experiment. What wrongful act on his part caused the explosion is not disclosed. A careful reading of the complaint fails to inform the court what the negligence complained of is, nor is there anything upon which, if true, the court could say that the instructor was incompetent

or the defendant negligent in employing him for the duties assigned to him. ˙ There is nothing in the complaint indicating an intent to charge negligence in employing the instructor.

For the purposes of this case the same rules should be applied as are applied to charitable or eleemosynary institutions. Colleges endowed as is Cornell, in a negligence action brought by a duly received student, should be protected, or held liable, by the same rules of law as are charitable institutions. The waiver implied from the relation between the student and the · endowed college protects the defendant against a recovery. The demurrer is sustained.

Demurrer sustained.