# BRUCE *v.* YOUNG MEN'S CHRISTIAN ASS'N.

No. 2807

May 23, 1929.                                         277 P. 798.

*Brown & Belford* and *E. F. Lunsford,* for Appellant:

374

*A. Grant Miller,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

The plaintiff sued to recover damages on account of the death of Leslie M. Bruce, which was the result of injuries received while using the gymnasium of the defendant, of which he was a member. While climbing and swinging on a rope attached to a screw bolt which was fastened to the ceiling or a joist, the bolt pulled out, causing the deceased to drop to the floor, falling on his head.

The defendant pleaded several defenses, among others that it is a charitable institution, and hence not liable in damages. From a judgment in favor of the plaintiff and an order denying a motion for a new trial, an appeal has been taken.

The first alleged error to be considered is the ruling of the trial court in sustaining the objection to certain evidence tending to show that the defendant is a charitable organization.

Article 8, sec. 2, of our constitution, provides that property of all corporations shall be subject to taxation, except that corporations formed for municipal, charitable, religious, or educational purposes may be exempted by law. Our legislature in 1911 enacted a statute exempting all property of Young Men's Christian Associations used for the purposes of such associations. Stats. 1911, p. 127; R. L. sec. 3842.

The evidence which was rejected was offered to support an affirmative defense pleaded in the answer to the following effect: That the principal objects for which the defendant was formed, as stated in its articles of incorporation, are to develop the Christian character of its members and to improve the spiritual, mental,

social, and physical conditions of young men; that defendant has no capital stock; that no person has or can derive private pecuniary profit therefrom, and that it has never paid and does not pay any salary or compensation to any of its directors or officers, or to any persons except employees; that the building belonging to defendant and used by it in promoting its chief aim was erected on land donated to the defendant in order that said building might be erected thereon; and that said building was erected and equipped with funds secured from gifts, donations, and contributions made by individuals impelled by charitable, benevolent, and philanthropic motives; that, in furtherance of its primary purposes, the defendant has carried on in said building religious courses of instruction along educational lines, and has had addresses and lectures on educational, moral, social, and other subjects; that it maintained a gymnasium and conducted gymnasium classes therein and maintained a swimming pool and other facilities for sports and physical exercise, and has conducted and permitted others to conduct social activities therein; that defendant, in order to promote its primary purposes, frequently permitted members of the general public, who were not members thereof, to use its said building, including its gymnasium, swimming pool, and general facilities, free of charge, or at a nominal charge, and that all of the members of defendant were and are entitled to use all of its facilities, and that they pay membership dues which in amount are wholly insufficient to cover the cost of maintenance and of carrying on its activities, which said members are entitled to enjoy.

We think the court committed prejudicial error in rejecting the evidence offered. While we do not think it necessary to pass upon the question as to whether the legislature in passing the act in question conclusively determined the defendant to be a charitable institution, it is certainly indicative of that idea. The defendant is not a municipal corporation, nor is it religious or educational, and, since it had authority to exempt only

one other class of institutions, and those charitable, a strong inference may be drawn that such was the class in which the legislature in adopting the act in question placed the defendant. But aside from the classification which the legislature made, if any, we are clearly of the opinion that the defendant is a charitable organization in case the tendered proof is established. In the case of Little, et al. v. Newburyport, 210 Mass. 414, 96 N. E. 1032, Ann. Cas. 1912D, 425, was presented the identical question here confronting us. The court said: "It will be seen that this is not an alms-giving organization. But that is not decisive of the question raised. Charity in the legal sense 'is not confined to mere alms-giving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man.' Braley, J., in New England Sanitarium v. Stoneham, 205 Mass. 335, 342, 91 N. E. 385, 387. The association carries on a work which is intended and adapted for the improvement and elevation of young men, not only to bring them under good influences, but to promote their moral, mental and physical welfare. It incurs expense for this purpose, for meeting which it relies mainly upon charitable contributions. In its essence, though not giving charity in the narrow sense of that word, it is a benevolent or charitable institution within the meaning of those words in the statute"—citing cases.

Mr. Justice Gray, in Jackson v. Phillips, 14 Allen (Mass.) 539, defined a charity as follows: "A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift

itself, if it is so described as to show that it is charitable in its nature."

This definition was approved in Hoeffer v. Clogan, 171 Ill. 462, 49 N. E. 527, 40 L. R. A. 730, 63 Am. St. Rep. 241. We heartily approve of this definition. In what better way, we may observe, than that adopted by the Young Men's Christian Association, and similar organizations, may the young be assisted in establishing themselves for life, and as good citizens who will contribute to the promotion of good government? It is to the interest of society and government to promote the highest type of citizenry, and an organization which contributes to this end lessens the burden of government. If this were a doubtful question, every presumption should be resolved in favor of the conclusion reached. We entertain no doubt concerning the point involved, from a consideration of sound reasoning, and the weight of authority is in line with this view. Carter v. Whitcomb, 74 N. H. 482, 69 A. 779, 17 L. R. A. (N. S.) 733; Philadelphia v. Women's Christian Ass'n., 125 Pa. 572, 17 A. 475; Young Men's Christian Ass'n. v. Douglas County, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123; Young Women's Christian Ass'n. v. Spencer, 29 Ohio Cir. Ct. R. 249; Goodell v Union Ass'n. etc., 29 N. J. Eq. 32. It is not necessary that an institution give alms to constitute it charitable in character. 5 R. C. L., p. 374, par. 119; Dingwell v. Seymour (Cal. App.) 267 P. 327.

■ Does the fact that the defendant is a charitable institution, of itself, warrant a judgment in its favor?

There are many decisions in this country holding in accord with the contention of appellant. These decisions hark back to the case of Feoffees of Heriot's Hospital v. Ross, 12 Clark & F. 507, 8 Eng. Reprint, 1508, as an authority establishing the doctrine.

That case grew out of the refusal of the trustees of a hospital, endowed for the benefit of poor fatherless boys, to receive a boy qualified for admission. Three opinions were written in that case. Lord Cottenham

observed: "The question then comes to this,—whether by the law of Scotland a person who claims damages from those who are managers of a trust fund, in respect of their management of that fund, can make it liable in payment. It is obvious that it would be a direct violation, in all cases, of the purposes of a trust, if this could be done; for there is not a person who ever created a trust fund that provided for payment out of it of damages to be recovered from those who had the management of the fund. No such provision has been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose."

It will be noted that the learned jurist stated the question in the first sentence quoted and then proceeded to answer it. The question, as stated, is whether a trust fund can be held liable for the mismanagement of the trust by the trustees. The basis of his conclusion is that to allow damages would be a diversion of trust funds to a purpose other than that intended by the creator of the fund, and, incidentally, to indemnify trustees for their own wrongdoing.

To say that we have had great difficulty in reaching a conclusion in this case would not be an exaggeration. However, after much study and analysis of the cases, we think we have reached the correct conclusion in the instant case.

We think it must be said to be a rash presumption to assume that any right-thinking, charitably disposed person would have ever contemplated that any fund he might establish should be used, managed, or disbursed in a manner which would defeat any principle of the existing law. It was certainly the law at the time of the endowment of the defendant that corporations and individuals generally were liable for their torts, and we know of no theory upon which any court would be justified in saying that any charitable organization is

above the law, or that the creator thereof contemplated that such should be the fact. However this might be, the instant case is dissimilar from the case mentioned, in that it was conceded in that case that the individual trustees might be liable in damages, though they were not liable in their trust capacity. The whole reasoning of the case is unsound, novel, and revolutionary, in that, if the trust fund was exempt, that is a matter that should have been asserted in a different proceeding rather than as a defense to the cause of action. To illustrate: A man's homestead in this state is exempt to the extent of $5,000, but that fact is no defense to a cause of action for damages.

It seems that the Heriot case has been repudiated in England and in some of her colonies. Mersey Docks v. Gibbs, L. R. 1 H. L. (Eng.) 93, 35 L. J. Exch. (N. S.) 225, 12 Jur. (N. S.) 571, 14 L. T. (N. S.) 697, 14 Week. Rep. 872; Hillyer v. Hospital, 78 L. J. K. B. N. W. 958, 101 L. T. (N. S.) 368, 9 British R. C. 1; Lavere v. Smith, 35 Ont. L. Rep. 98; 9 British R. C. 13.

However this may be, while some of the leading cases in the United States concede that the weight of authority is in accord with the general principle that a trust fund cannot be diverted, in any event, from the purpose of the charity to the payment of damages sustained at the hands of a charitable corporation, we think such is not the fact. Upon an analysis of the cases, we find in this country decisions holding squarely against the doctrine contended for by appellant; and others, though cited in support of the doctrine contended for by appellant, in fact will not justify such contention. The first case in this country which is supposed to sustain the contention of appellant, and which is the foundation for the Massachusetts rule, is that of McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529. That was a suit against a charitable institution for damages sustained by a patron of the institution. Amazing as it may seem, nothing was said in that opinion to the effect that the defendant would not be liable for the reason that to give judgment

it would be a diversion of trust funds from the purposes for which they were intended, but it was held that a charitable institution is not liable where there has been no neglect on the part of the institution in the exercise of care in the selection of its inferior agents. Just how such an opinion can be an authority for the contention of appellant is beyond our understanding. It is a concession that it would be liable for an injury resulting from negligence in the selection of its inferior agents. Such a concession can be interpreted in no other way but as a repudiation that a charitable institution will not be liable in any event for its negligence, as is contended by appellant. Yet this case is often cited in American cases to support the doctrine that a charitable institution is not liable for damages in any event.

One of the leading cases in this country which flatly repudiates the doctrine contended for by appellant is that of Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675, where the earlier cases are reviewed and greatly shorn of their force.

The supreme court of New Hampshire took the same view in Hewett v. Woman's Hospital Aid Ass'n., 73 N. H. 556, 64 A. 190, 7 L. R. A. (N. S.) 496. A strong opinion taking the same view is that of Tucker v. Mobile Infirmary Ass'n., 191 Ala. 572, 68 So. 4, L. R. A. 1915D, 1167.

There are many cases holding that a charitable institution is liable for its negligence in the employment of unskilled and incapable employees resulting in injury to its patrons. Others hold that such an institution is liable for the negligence of its employees. The cases so holding necessarily repudiate the broad contention of appellant to the effect that a trust fund cannot be resorted to to compensate one injured through the negligence of one administering the trust. There can be no reconciling these and decisions of a like character with the idea of absolute immunity from liability, as stated in Heriot's Hospital v. Ross, supra. In other words, it is as much a diversion of trust funds from the

object for which the trust was created by giving judgment because of the negligence in selecting servants as to divert it to pay damages resulting from a wrongful act of the trustees, such as in the Heriot Hospital case.

One of the strongest, if not the strongest, opinion, holding that a charitable institution is liable for damages arising out of the selection of unskilled servants, is that of Basabo v. Salvation Army, 35 R. I. 22, 85 A. 120, 42 L. R. A. (N. S.) 1144.

The opinion in the case we have just mentioned reviews all of the decisions theretofore rendered upon the question here involved, and the court reached what we think a sound conclusion, and we will content ourselves with calling attention to a few of the cases subsequently decided in accord with the views therein expressed.

In Hospital of St. Vincent of Paul v. Thompson, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025, in an opinion by Keith, J., a learned and distinguished jurist, the court repudiated the contention that a charitable institution is immune from liability, though on a different theory from that expressed in some of the cases.

The supreme court of Indiana, in St. Vincent's Hospital v. Stine, 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361, while apparently not satisfied to repudiate the trust fund doctrine, seems, as a matter of precaution, to have made its opinion turn upon the proposition that a charitable institution is not liable if it uses due care in the selection of its employees. In truth, this opinion contains but little nutriment for the proponents of either side of the real question.

The supreme court of Tennessee, in Love v. Nashville etc., Inst., 146 Tenn. 550, 243 S. W. 304, 23 A. L. R. 887, said: "The trust fund doctrine as applied in the Waldon Academy case [118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179], carried to its logical conclusion, would permit of no exceptions, and operate to exempt institutions of this character from damages of all sorts, which might result from mismanagement of the officers

of the corporation or the torts of any of its agents or employees, regardless of how they may have been inflicted or the persons affected thereby. * * * Whatever may be said for or against the soundness of the doctrine as an original proposition, we are not prepared to repudiate it, and do not do so, but there are cogent reasons for limiting its operations, and the real question here is whether or not a limitation to its application should be made in the case now before the court."

The court in the opinion mentioned admits that it has misgivings as to the soundness of the trust fund rule, but does not seem prepared to break away from the fetish worship which influenced so many courts.

Another case which tacitly repudiates the trust fund doctrine is Bruce v. Central Methodist Episcopal Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150. Amazing as it seems, while the court says it is committed to the trust fund doctrine, it holds that the defendant, a charitable organization, is liable for the negligence of its servants. Such a position is indefensible. If a trust fund created for charitable purposes cannot be diverted from the purpose to which it is dedicated, because of the negligence of the trustee, on what sound basis can it be diverted from such purpose because of the negligence of an inferior employee? Another Michigan case which substantially repudiates the trust fund doctrine is that of Gallon v. House of Good Shepherd, 158 Mich. 361, 122 N. W. 631, 24 L. R. A. (N. S.) 286, 133 Am. St. Rep. 387.

The supreme court of Nebraska, though in line with the trust fund doctrine, in Marble v. Nicholas Senn Hospital Ass'n., 102 Neb. 343, 167 N. W. 208, held that a doctor, who, by invitation, entered a hospital with a patient to procure a radiograph and is injured through the negligence of an X-ray operator, can recover. Such a decision cannot be reconciled with the trust fund theory. If a trust fund is sacred for the reason generally given, why is it not sacred in every kind of a case? Is it not as much a diversion of the trust fund in the case just mentioned as it would be in the case of a

patient of a hospital? Such opinions seem to us to be arbitrary and without rhyme or reason to support them.

In McInerny v. St. Luke's Hospital Ass'n., 122 Minn. 10, 141 N. W. 837, 46 L. R. A. (N. S.) 548, it was held that an employee injured through the negligence of the hospital, ·a charitable institution, might recover. Another case to the same effect is that of Hotel Dieu v. Armendarez (Tex. Com. App.) 210 S. W. 518. The latest case in line with the view we take is that of Lewis v. Young Men's Christian Ass'n. (Cal. Sup.) 273 P. 580.

A flood of cases might be cited holding that a charitable institution is ,liable for its negligence in the selection of its employees, for the negligence of its employees, to strangers, or for some other reason. Every decision so holding, no matter how astutely the court may seek to evade the real question—that is, the charitable trust theory—is in fact, where the question is presented, a denial of that doctrine, for, as we have said, in substance, a charitable institution is either exempt or it is not. No sophistry, no refinement of argument, can consistently hold that a charitable institution is exempt in the one case and not exempt in the other.

█ █ It is next asserted that, since the deceased was a beneficiary of the charity of the defendant, there can be no recovery, even though he paid the annual dues required of all members. As we understand plaintiff's position as to this contention, it is the general one that the deceased cannot be said to have assumed a risk that he did not know of, and that there is no showing that he knew of the defect which resulted in his death. Of course it is a well-known general rule in damage suits that one only assumes the risk of a known danger, but that rule has no application in this character of a case.

The leading case in support of the doctrine here contended for is that of Powers v. Massachusetts Homeopathic Hospital, 109 F. 294, 47 C. C. A. 122, 65 L. R. A. 372, from which we quote:

" * * * If, indeed, there can be shown an agreement by the plaintiff to hold the defendant harmless

for the acts of its servants, then it follows that this action cannot be maintained, and we agree with the learned judge of the court below that this agreement arises by necessary implication from the relation of the parties. That a man is sometimes deemed to assume a risk of negligence, so that he cannot sue for damages caused by the negligence, is familiar law. Such is the case of common employment, and such are the cases of athletic sports and the like, put by Pollock on page 150 et seq. Such is the case at bar. One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hospital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. We cannot perceive that the position of the defendant differs from the case supposed. The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If, in their dealings with their property appropriated to charity, they create a nuisance by themselves or by their servants, if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their

charity, he takes the risks of malpractice, if their charitable agents have been carefully selected.

"We have thus indicated the grounds upon which rests, in our opinion, the defendant's exemption from liability in this case. Though we feel constrained to differ from the reasoning followed by some other courts in reaching the same conclusion, we are not unmindful that the identity of conclusion reached, though by different roads, is a strong proof of its correctness. Doubtless a weight of authority is more overwhelming if it is identical in reasoning as well as in result, but identity of result is in itself no mean argument for its justice."

Such is the rule in New York. Chief Justice Cullen, in delivering the unanimous opinion of the court in Horden v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L. R. A. (N. S.) 62, 139 Am. St. Rep. 889, after disposing of the trust fund theory, said: "In several jurisdictions, however, the immunity of charitable corporations for the torts of their trustees or servants has been made dependent on the relation the plaintiff bore to the corporation. In all it is recognized that the beneficiary of a charitable trust may not hold the corporation liable for the neglect of its servants. This is unquestionably the law of this state."

The learned jurist, after citing and commenting on various authorities, quotes a portion of the language above quoted from the Powers case, and concludes with this observation: "We can add nothing to the force of this reasoning, but simply express our concurrence therein."

The supreme court of Michigan is also committed to the theory stated. In Bruce v. Central Methodist Episcopal Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150, after holding that the defendant was a charitable institution, and distinguishing the case under consideration from that of Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427, held that those voluntarily

accepting the benefits of a charity cannot recover from the dispenser of charity for its negligence.

In Hamburger v. Cornell University, 99 Misc. Rep. 564, 166 N. Y. S. 46, the court considers the point at length, stating: "In all jurisdictions it is recognized that the beneficiary of a charitable trust may not hold the corporation liable for the neglect of its servants."

In the instant case, the deceased, like all other members, paid only nominal dues, and hence voluntarily accepted the benefit of a charitable institution.

In the light of the circumstances and the well-established rule, we see no recourse open but to reverse the judgment and order appealed from.

It is so ordered.

ON PETITION FOR REHEARING

August 6, 1929.

*Per Curiam:*

Rehearing denied.