CHARLES A. HENDEL, APPELLANT, v. CHARLES E. WEAVER, MINERAL COUNTY ASSESSOR, RESPONDENT.

No. 4311

February 2, 1961                    359 P.2d 87

· *Ernest S. Brown* and *Jack I. McAuliffe,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, *John A. Porter,* Deputy Attorney General, *W. T. Mathews,* Special Deputy Attorney General, and *L. E. Blaisdell,* District Attorney, Mineral County, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This appeal tests the constitutionality of NRS 361.090 reading in part as follows: "Veterans' exemptions. The property, to the extent of $1,000 assessed valuation, of any actual bona fide resident of the State of Nevada for a period of more than 3 years who has served  *  *  * in the Armed Forces of the United States in time of war  *  *  * shall be exempt from taxation."

The statute has a long history. "An Act exempting property of veterans," approved March 10, 1917 (Stats. 1917, 65) granted to veterans an exemption to the amount of $1,000, provided the veteran's income did not

exceed $900 per annum and he did not own property over $3,000 in value. This was amended in 1921 (Stats. 1921, 166) by increasing the maximum income proviso to $1,200 and increasing the property proviso to $4,000. A further amendment in 1923 (Stats. 1923, 360) increased the maximum income proviso to $1,800, but left intact the maximum ownership proviso of $4,000. In 1925 (Stats. 1925, 250) the legislature exempted property used by any post or unit of any national organization of ex-servicemen. In 1927 (Stats. 1927, 140) the legislature deleted the provision limiting the benefit of the act to persons having income of less than $1,800 per annum. In 1945 (Stats. 1945, 43) the burden of obtaining the exemption was lightened in certain cases by eliminating the necessity for filing annual affidavits. In 1947 (Stats. 1947, 674) the legislature required proof of continuation of the veterans' status. In 1949 (Stats. 1949, 28) the statute was re-enacted providing for $1,000 exemption without limitation as to income or ownership of property. Further amendments are found in Stats. 1951, 301, Stats. 1953, 595, Stats. 1953, 598, Stats. 1954, 30, and Stats. 1955, 341. The last group of amendments do not involve any matters with which we are here concerned.

The constitutional limitation, which the present act is said to contravene, is contained in the Nevada constitution, Art. 10, Sec. 1. This section, so far as here pertinent, now reads as follows: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property * * * and there shall also be excepted such property as may be exempted by law for municipal, educational, literary, scientific *or other charitable purposes.*" Since its adoption in 1864 this section of the constitution has been amended several times. These amendments require no discussion, other than to recognize the amendment proposed and passed by the legislature in 1939 (Stats. 1939, 360), agreed to and passed by the legislature in 1941 (Stats. 1941, 559), and ratified by the people in 1942, which preserved the exemption

from taxation of "such property as may be exempted by law for municipal, educational, literary, scientific *or other charitable purposes."*

It is conceded that only under the last-quoted clause and particularly under the last phrase thereof—*"or other charitable purposes,"* can the veterans' statutory exemption be justified. State v. Carson City Savings Bank, 17 Nev. 146, 30 P. 703. It must be conceded also that the decisions of the several states are not in harmony as to the validity of such legislation, under varying constitutional provisions. See discussion in Anno. 116 A.L.R. 1437. The court below held that the statute did not violate the constitutional provision in question.

Appellant presents the following contentions:

"1. Conceding that the original statute was for a charitable purpose the statute has been so changed by the legislature that the original purpose no longer exists.

"2. Conceding that rehabilitation of veterans is a proper charitable purpose, it must be limited and restricted to veterans who need rehabilitation.

"3. That the statute as it now exists does not accomplish a charitable purpose within the meaning of the Constitution of the State of Nevada."

These three contentions present but a single and readily understandable concept. Paraphrasing appellant's argument, to confer a financial benefit on a wealthy veteran is not an act of charity. A statute that accomplishes this does not effectuate a charitable purpose. The original statute restricting to needy veterans the benefit conferred did effectuate such a purpose. The legislature could reasonably recognize that years of military service could materially affect the financial status of the veteran. A partial relief from taxation could help and hasten his rehabilitation, could lessen the danger of his becoming a public charge and could, to that extent, reduce the burden of government. The amendment stripped the statute of its only justification. This argument is not without persuasiveness but, by reason of

the matters hereinafter discussed, we are compelled to reject the same.

For definitional purposes, appellant quotes at length from *Young Men's Christian Ass'n. of Germantown v. City of Philadelphia*, 323 Pa. 401, 187 A. 204, 210. The case itself is not in point on its facts. The holding is simply that the local Y. M. C. A. was properly exempted from taxation with reference to that part of its property devoted wholly to charitable uses, but that its dormitory rooms rented at reasonable prices were used in commercial transactions and therefore not exempt. The holding is supported by authorities from many states. The opinion does, however, contain an exposition of why charitable institutions are exempted from taxes, namely, because they do, pro tanto, assume a share of the public burden, the care of persons for whom the government would otherwise have to provide. Appellant then ties this into his main contention that our veterans' exemption statute, valid so long as it applied only to veterans with limited income and with limited ownership of property, became invalid when these limitations were removed. The Y. M. C. A. case, and all the scores of the Y. M. C. A. cases, are undoubtedly correct as applied to "charitable institutions," but that does not touch our problem, which is more analogous to the question of exempting (to the same extent) the property of widows and orphans.

The learned trial judge, citing *State of Nevada v. Parkinson*, 5 Nev. 15, 5-6-7 Nev. 17, noted the view of this court that contemporaneous legislation may always be considered in force in constitutional interpretation, and that this was given greater weight by reason of the fact that a number of the members of the legislature enacting the legislation granting the exemption to widows and orphans had likewise been members of the constitutional convention that "framed" the particular constitutional provisions in point. The district judge proceeded: "In the instant case certain contemporaneous legislation throws considerable light on the question of the intention of the constitutional convention of 1864 with respect to the power and authority granted to the

legislature concerning tax exemptions. The revenue act passed at the First Session of the Legislature of Nevada contained a provision for the exemption of the property of widows and orphans of the value of not more than $1,000." Under the analogy, then, of a veteran's exemption from taxation to the extent of $1,000 (without regard to the veteran's annual income or ownership of property) with the $1,000 exemption granted to widows and orphans by the first legislature (Stats. 1864-5, 273), he concluded that the veterans' exemption did not violate the constitutional limitation.

Appellant rejects this reasoning as follows: "Inasmuch as the philosophy of the English-speaking world since time immemorial has been to collectively aid widows and orphans, it is a traditional burden of the body politic to ensure that such unfortunates should not be cast out where they cannot make their way. It is, therefore, perfectly consistent for the taxing authority to alleviate distress with tax exemptions. But it defies reason to equate all veterans with widows and orphans. In most families the man is the breadwinner. A child is not capable of assuming such a task, nor is a woman capable of fully meeting the requirements of the situation. It would appear to appellant that this factor and this factor alone is the only legitimate basis for a tax deduction to widows and orphans."

This concession by appellant must be read in connection with his primary thesis, namely, that the statute as originally written, concededly valid because the exemption was given only to needy veterans (those with a specified limited annual income and with a specified limitation of property owned), became invalid when the limited income and limited property ownership provisos were stricken. But widows may own large estates and orphans may have extensive properties held in trust for them. This must be conceded. Nevertheless, the original statute applied, and our present statutes still apply, to all widows and orphans, not merely to needy widows and orphans. Thus it would appear that the exemption to all widows and orphans does not find its approval in

the conclusion that they would otherwise be burdens upon the community and that the exemption relieves the public burden.

The statute exempting to the extent of $1,000 taxation of the property of all widows and orphans, under the constitutional authority to exempt property from taxation for charitable purposes, has been on our books ever since territorial days. It was contemporaneous with the adoption of the constitution itself. Participating in its legislative enactment were a number of the men who were part of the constitutional convention. So far as the court is advised, the statutory exemption (to the extent of $1,000) of the property of all widows and orphans has never been questioned. We may properly consider these factors. Worthington v. Second Judicial District Court, 37 Nev. 212, 142 P. 230, L.R.A. 1916a, 696. To dispose of this situation by the explanation that without this assistance widows and orphans might become a public charge rejects the very objection made by appellant to the veterans' exemption statute. If wealthy widows, and orphans who are beneficiaries of large trust estates, are in no danger of becoming public charges, and if it is nevertheless conceded that the widows' and orphans' exemption statute does not violate the constitutional limitations (and it is so conceded), then the argument of appellant fails.

We may consider, too, the apparent determination of the legislature that the objective of the legislation was for a charitable purpose. In Bruce v. Young Men's Christian Ass'n., 51 Nev. 372, 379, 277 P. 798, 799, this court said: "While we do not think it necessary to pass upon the question as to whether the legislature in passing the act in question conclusively determined the defendant to be a charitable institution, it is certainly indicative of that idea." We may resort to the same case for a definition of charity: "Mr. Justice Gray, in Jackson v. Phillips, 14 Allen (Mass.) 539, defined a charity as follows: 'A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing

laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' " Id., 51 Nev. 380, 277 P. 799.

The court frankly concedes that its conclusion is based almost entirely on analogy; that reasoning by analogy is not infallible; that it may often be inconclusive. Yet it is often used to support the opinions of the courts. "If," says Bracton, "any new and unwonted circumstances, hitherto unprecedented in the realm shall arise, then if anything analogous has happened before, let the case be adjudged in like manner, since it is a good opportunity for proceeding *a similibus ad similia*."[1] And Coke, who took much of his law from Bracton, also noted: "For like reason doth make like law."[2] Thoreau stated: "All perception of truth is the perception of an analogy; we reason from our hands to our head."[3] Colton is quoted as having said: "Analogy, although it is not infallible, is yet that telescope of the mind by which it is marvelously assisted in the discovery of both physical and moral truth."[4]

The analogy in the present instance is more than persuasive. Granted the propriety of exempting from taxation the property of *all* widows and orphans to the extent of $1,000 valuation, there follows the recognition of the propriety of exempting the property of *all* veterans from taxation to the extent of $1,000. If *not all* veterans are in danger of becoming a public charge, neither are *all* widows and orphans.

---

[1] Bracton, De Legibus et Consuetudinibus Angliae, f. 1b. Compilation by M. Frances McNamara, Matthew Bender & Co., Inc., 1960, 12.
[2] Idem.
[3] Book of Unusual Quotations, ed. by Rudolf Flesch, Harper & Brothers, 1957, 10.
[4] Dictionary of Thoughts, by Tryon Edwards, F. B. Dickerson Co., 1906, 18.

Or let us examine appellant's argument that the exemption granted to a *needy* veteran (one having an annual income of not more than $1,800) met the constitutional requirement that the exemption be for a charitable purpose, but that the exemption granted without the qualification did not. Veteran A has but himself to support, but because his annual income is only $1,700, he is a proper subject of the state's charity. Veteran B has a wife and five small children to support, but because he has an annual income of $1,800, he is not a proper subject of the state's charity. That this suggests only a legislative problem is not a satisfactory answer. For over 40 years our successive legislatures have wrestled with the question. In 1927 (when the provision relating to annual income was deleted) and finally in 1949 (when the provision relating to ownership of property was deleted) the conclusion was apparently finally reached that an assumption of *need,* or an arbitrary factual determination of *need,* based on a fixed limitation of income or a fixed limitation of property owned was not right, just, accurate, or equitable, nor was it in effect equal or uniform, but that it was based on a "rubber yardstick." Nor can it be said that this is still a legislative problem. The legislature could well have found that it would be necessary to create a commission to determine the *need* of each veteran, each year, to determine his right to the exemption, but that such commission (with its chairman, its secretary, its field examiners, with their respective salaries, expenses, travel allowance, office space and office equipment) would operate at an administrative cost many times the extent of the benefit conferred.[5] Not only did the legislature have the veteran's exemption statute before it for over 40 years, but it had the widows' and orphans' exemption statute before it for some 97 years unchanged. The legislature is presumed to have investigated the facts on which the legislation is based. Viale v. Foley, 76 Nev. 149, 350

---

[5]The statutory exemption of $1,000 of property from taxation could not, under our constitutional limit of taxation of $5 per $100 valuation, exceed $50 a year in payment of taxes.

P.2d 721. We must assume that it rejected, as thoroughly impracticable, any attempt at administration of an exemption governed by annual income and amount of property owned and establishing the estimated need of each veteran as determined by the findings and conclusions of a commission's field examiners. The statute comes to us clothed with the presumption of validity. Viale v. Foley, supra. It is our opinion that such presumption has not been overcome.

The relief sought by appellant was that the respondent county assessor be enjoined from allowing the tax exemption to veterans. The judgment denying such relief is affirmed.

PIKE and McNAMEE, JJ., concur.