Rosalea **GALLEGOS**, a minor, by her mother, Mary Jane **GALLEGOS**, and Mary Jane Gallegos, individually, Plaintiffs,

v.

**SOUTHERN NEVADA MEMORIAL HOSPITAL**; the County of Clark, a political subdivision; Thalia M. Dondero, Bruce Woodbury, Woodrow Wilson, David B. Canter, Manuel J. Cortez, Jack R. Petitti and Dick R.J. Ronzone, as Trustees of Southern Nevada Memorial Hospital and Commissioners of the County of Clark; Marshall Edward Noel, M.D., Esther Akogyeram, M.D.; Edward Rajnovich, M.D.; Donald C. Reck, M.D.; and John Does I–XX, Defendants.

**No. Civ. LV 82–66 RDF.**

United States District Court, D. Nevada.

May 25, 1983.

Bell, Leavitt & Green by Michael J. Grace, Las Vegas, Nev., Hayt, Hayt & Landau by Lawrence P. Zamzok, Albuquerque, N.M., for plaintiffs.

Paul C. Parraguirre, Las Vegas, Nev., for County of Clark and Marshall Edward Noel, M.D.

Gifford & Vernon by Dean P. Vernon, Las Vegas, Nev., for Esther Akogyeram, M.D.

Dickerson, Miles, Pico, Mitchell & Wagner by James F. Pico, Las Vegas, Nev., for Edward Rajnovich, M.D.

Cromer, Barker, Michaelson, Gillock & Rawlings by Gerald I. Gillock, Las Vegas, Nev., for Donald C. Reck, M.D.

## RULING ON MOTIONS

ROGER D. FOLEY, Senior District Judge.

### STATEMENT OF FACTS

Plaintiff, as guardian ad litem for her infant daughter, seeks substantial damages from Clark County, Nevada, and certain medical doctors, alleging that the County's hospital employees were negligent in the operation of its hospital,[1] that the doctor defendants, either as employees of the hospital or as members of the staff of the hospital, were negligent in treating plaintiff as an indigent patient at the time of the birth of her infant daughter on February 23, 1980, and that, because of the negligence of hospital employees and the doctor defendants, the child has suffered permanent brain damage.

### MOTIONS

Clark County has moved to dismiss and for summary judgment, raising questions of sovereign immunity and charitable immunity. The doctor defendants join in these motions.

### SOVEREIGN IMMUNITY

In 1965, and with amendments through 1981, the Nevada Legislature waived, for the state and its political subdivisions, sovereign immunity, provided certain conditions were met. The state and its political subdivisions consented to have their liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations, if certain specified conditions were met. See NRS 41.031 to 41.039, inclusive.

The sovereign immunity waiver scheme contemplates that the state or its political subdivisions could be held liable for the torts of its public officers and employees if committed within the scope of their public employment. The scheme provides that:

(a) An action in tort arising out of an act or omission within the scope of public

---

1. Clark County operates and maintains Southern Nevada Memorial Hospital. The County hospital provides for the treatment of both paying patients and indigent patients.

duties or employment may be brought against a public officer or employee if the state or appropriate political subdivision were also named a party defendant;

(b) The maximum amount of damages that the tort claimant could be awarded is $50,000;

(c) If the public officer or employee is found liable and judgment entered against him, with certain exceptions the state would indemnify the public officer or employee.

It should be noted that the scheme takes away from a tort claimant the common law cause of action against the public employee for the tort committed by the public employee within the scope of public employment and, in its place, provides that the public employee can be sued for tort committed within the scope of public employment along with the state or appropriate political subdivision, the tort damages being limited to $50,000, and provides that the public employee be indemnified by the state or political subdivision.[2]

Under the scheme, then, in this case plaintiff could recover damages not to exceed $50,000 if she proves at trial that public employees of the hospital, acting within the scope of their hospital employment, were negligent in treating her and her infant child and that such negligence was a proximate cause of the child's brain damage, the public employees to be indemnified by the County.

Who are the public employees that might be liable in this case? They would include any persons employed in the hospital that played a part in the treatment of the plaintiff and her daughter, including nurses, technicians and aides, as well as doctors and interns *employed*, part or full time, by the hospital.

NRS 450.440 provides for a staff of physicians for county hospitals and reads in part as follows:

"450.440 *Staff of physicians: Organization; rotation of service; compensation; assistance.*

1. The board of hospital trustees shall organize a staff of physicians composed of every regular practicing physician and dentist in the county in which the hospital is located who requests staff membership and meets the standards fixed by the regulations laid down by the board of hospital trustees.

2. The staff shall organize in a manner prescribed by the board so that there is a rotation of service among the members of the staff to give proper medical and surgical attention and service to the indigent sick, injured or maimed who may be admitted to the hospital for treatment.

3. No member of the staff nor any other physician who attends an indigent patient may receive any compensation for his services except as otherwise provided in NRS 450.180 or to the extent that medical care is paid for by any governmental authority or any private medical care program.

4. The board of hospital trustees or the board of county commissioners may offer the following assistance to members of the staff in order to attract and retain them:

(a) Establishment of clinic or group practice;

(b) Malpractice insurance coverage under the hospital's policy of professional liability insurance;

(c) Professional fee billing; and

(d) The opportunity to rent office space in facilities owned or operated by the hospital, as the space is available, if this opportunity is offered to all members of the staff on the same terms and conditions."

NRS 450.180 provides in pertinent part as follows:

"450.180 *Employment, removal of hospital staff, employees; contracts for*

---

**2.** If the tort is not committed within the scope of public employment, the scheme does not af-

fect at all the common law remedy against any such public employee.

*medical services.* The board of hospital trustees shall have the power:

1. To appoint a suitable superintendent or matron, or both, and necessary assistants, and to fix their compensations.

2. To employ physicians and interns, either full-time or part-time, as the board determines necessary, and to fix their compensations.

3. To remove those appointees and employees.

4. To control the admission of physicians and interns to the staff by promulgating appropriate rules, regulations and standards governing those appointments.

5. To contract with individual physicians or private medical associations for the provision of certain medical services as may be required by the hospital. The compensation provided for in the contract must not include compensation to the physician for services rendered to indigent patients."

It is alleged that plaintiff and her child were treated by the doctor defendants who were either *employees* of the hospital or were serving on the *medical staff* of the hospital.

As stated, the plaintiff as tort claimant has a limited right under the scheme to recover from any doctor *employed* by the hospital or other hospital employee, but the scheme does not take away a tort claimant's common law action against *staff doctors* because the scheme does not affect a staff doctor, just as it does not affect the right of a paying patient to pursue a common law action for tort against a *retained* physician who is paid for his services.

■ Under the scheme created by the Nevada Legislature conditionally waiving sovereign immunity, the rule appears to be

that a claimant, whether a paying patient or an indigent patient, can sue the County Hospital and its employees acting within the scope of their public employment, for their negligence and recover damages not to exceed $50,000, the public employees to be entitled to indemnification from the County. Such public employees include doctors *employed,* full-time or part-time, by the hospital, and exclude *retained doctors* treating paying patients in the hospital, and exclude *staff doctors* treating indigent patients in the hospital.

Insofar as Nevada's sovereign immunity scheme is concerned, the defendants' motions are denied.[3]

## CHARITABLE IMMUNITY

■ ·This is a diversity case and under the Erie Doctrine this Court must apply the substantive law of Nevada. Relying upon the case of *Bruce v. Young Men's Christian Ass'n,* 51 Nev. 372, 277 P. 798 (1929), and *Springer v. Federated Church,* 71 Nev. 177, 283 P.2d 1071 (1955), defendants contend that the hospital and doctor defendants are immune from this suit by plaintiff under the doctrine of charitable immunity, since plaintiff was an indigent patient and received free medical services for herself and infant child from the hospital and medical staff. The plaintiff alleges that the charitable immunity doctrine has been abandoned in Nevada by the Nevada Legislature and, if not directly repealed, at least it was repealed by implication. Defendants argue that the charitable immunity doctrine is the law of Nevada and must be applied here by this Court since repeals by implication are not favored, urging a rule of strict construction. The Court has carefully considered the *Bruce* and *Springer* cases and all of the Nevada statutes since *Springer* cited in the briefs, i.e., NRS

**3.** Another problem should be addressed, although the briefs do not mention it. Under NRS 41.036, an action cannot be brought under the scheme against a county and its employees without filing a claim with the county commissioners within two years from the time the cause of action arose. Although the section since 1981 has provided that the filing of the

claim within two years of the accrual of the cause of action is not a condition precedent to suit under the scheme, the timely filing of the claim is clearly a condition that must be met. If no such timely filing of the claim was met in this case (and this Court does not know whether this was done), the question arises, what is this Court's responsibility under the scheme?

41.480 enacted in 1957, NRS 428.095(1), NRS 450.440 and NRS 41A.097, and is of the opinion that were the charitable immunity question brought before the Nevada Supreme Court today, that ancient rule would be abolished. However, this Court believes that Erie does not compel it to follow and apply *Bruce* to this case because the application of the charitable immunity rule to this case would not only raise havoc with the waiver of the sovereign immunity scheme enacted in 1965, as amended through 1981, by the Nevada Legislature, but would also raise serious equal protection and due process questions. Although the Nevada Legislature has not, in so many words, abolished the charitable immunity rule, it must by implication be said to have quite clearly and necessarily done so for the reasons as follows.

As noted supra, under the Nevada scheme a paying patient, as well as an indigent patient, of a county hospital, can sue both the hospital itself and its public employees for tort committed in the scope of public employment by public employees of the hospital, including doctors and interns employed by hospitals, full-time and part-time, and recover not to exceed $50,-000, the employees against whom judgments may be entered to be indemnified by the county. If the charitable immunity rule is applied, then an indigent person cannot sue the county.[4] However, since the county employees are to be indemnified by the county, under the Nevada scheme, the county being immune under the charitable immunity rule, the result would be that either the hospital employees are also immune or they could be held liable but not entitled to indemnity from the county. This curious result could not have been intended by the Nevada Legislature when it enacted in 1965, and amended through 1981, the Nevada waiver of sovereign immunity scheme. Such a result would take away from an indigent patient the remedy

that the Nevada scheme gives to both indigent and paying patients to sue and recover for torts committed against the patient by public employees acting within the scope of public duty. Such a result raises serious questions of equal protection and due process. This Court must conclude that the charitable immunity rule of *Bruce* cannot be interposed into the Nevada waiver of sovereign immunity scheme. The defendants' motions in this regard are denied.

### PLAINTIFF'S MOTIONS

Plaintiff's motions for sanctions, for fees and costs and for an accelerated trial date are denied. Defendant Dr. Reck's motion to amend answer, filed October 15, 1982, is granted.

---

**4.** Although the defendants urge that the charitable immunity rule applies to the hospital employees, the *Bruce* case and cases discussing the charitable immunity rule, in other states, do not, so far as this Court can determine, apply the charitable immunity rule to doctors and other employees of the charitable institutions. So, if the charitable immunity rule applies here, it would immunize the County only and not the hospital employees.