[No. 1590.]

STATE OF NEVADA, EX REL. W. E. WINNIE, RELATOR, v. A. B. STODDARD, ET AL., AS THE BOARD OF COUNTY COMMISSIONERS OF STOREY COUNTY, RESPONDENTS.

CONSTITUTIONAL LAW—LEGISLATURE—APPORTIONMENT. The constitution of this state contains no restrictive or mandatory provisions as to the time when, or how often, the legislature may make the representative apportionment. The legislature, therefore, may make such apportionments as often as it so wills.

IDEM—RULE. This court will not pass upon a constitutional question unless it is clearly involved, and a decision thereon is necessary to a determination of the case.

MANDAMUS—WHEN WRIT WILL ISSUE. This court, in the exercise of its discretion, in proceedings in *mandamus*, will grant the peremptory writ only when the right sought to be protected is clear and undoubted.

IDEM—ELECTIONS—LEGISLATIVE APPORTIONMENT. Where, on an application for *mandamus* to compel a board of county commissioners to issue notice of a general election for members of the legislature under the apportionment act of 1891, on the ground that the apportionment act of 1899 is unconstitutional, it appears that the act of 1891 is subject to the same objections, the writ must be denied.

ORIGINAL PROCEEDING. Application for a writ of *mandamus* by the State, on the relation of W. E. Winnie, to

compel A. B. Stoddard, and others, as the Board of County
Commissioners of Storey County, to cause their clerk to issue
an election notice.   Certain other parties intervened by per-
mission of court.   Writ denied.

*W. E. Winnie, in pro. per.:*

I.   Relator contends that the act of 1899 is unconstitu-
tional and void, in that the apportionment of senators and
assemblymen made therein was not based upon an enumera-
tion of the inhabitants of this state taken under the direc-
tion of the legislature thereof, nor upon any census taken
under the direction of the congress of the United States, as
required by the provisions of section 13 of article XV of the
constitution of this state, and violates section 13 of the
declaration of rights in said constitution. (Stats. 1899, p.
121; Const., sec. 13, art. XV; sec. 13, Declaration of Rights;
Nevada Const. Debates and Proceedings, pp. 66 and 614.)

II.   That the act of 1899 being unconstitutional and void,
the act of 1891 is still of full force and effect.   (11 Nev. 69;
22 Nev. 351–354; 3 Am. & Eng. Enc. Law, 678.)

III.   There is no question but that the last official census
of Nevada, taken prior to the passage of the act of 1899,
was taken in 1890, under the direction of the congress of the
United States.   The apportionment act of 1891 was passed at
the next session of the legislature following the taking of this
census.   It is conclusively presumed that this act was based
upon that census, that all of the constitutional prerequisites
were complied with and the act properly passed. (56 Pac.
Rep. 1008.)

*E. L. Williams*, District Attorney of Washoe County,
*Frank McNamee*, District Attorney of Lincoln County,
*Thomas Wren* and *A. E. Cheney*, for Respondents and Inter-
veners:

I.   The writ of mandate is only granted when, in the exer-
cise of discretion, it can be seen that the right sought to be
protected is clear and undoubted.   No other remedy exists
and the writ if issued will be effectual.   (High, Extr. Leg.
Rem., 3d ed., sec. 9; *State* v. *LaGrave*, 22 Nev. 417; 13 Enc.
Pl. & Prac. 493, 494.)

II.   There is no constitutional mandate in this state as to when or how often the legislature shall apportion the representation.   There being no restriction upon that body, it may act as often as it sees fit.   It possesses every legislative power not expressly denied.   With the exercise of its discretion courts will never interfere, unless there has been a plain, flagrant and intentional disregard of the constitution—unless it can be seen from the act itself that it has been enacted not in the exercise of a power granted by the constitution to secure some end sought by the fundamental law, but in disregard of the grant of power and destroys the very protection sought to be afforded.   (*People* v. *Rice*, 135 N. Y. 473; *Baird* v. *Supervisors*, 142 N. Y. 527; *People* v. *Thompson*, 155 Ill. 451; *State* v. *Campbell*, 48 Ohio St. 435; *Prouty* v. *Stover*, 11 Kan. 235, 261; Opinion of Justices, 18 Me. 458, 468, 488; *State* v. *Ruhe*, 52 Pac. 275.)

III.   It is manifest that the act of 1899 is more equal and just under existing conditions than that of 1891.   If the act of 1899 is unconstitutional, that of 1891 also is, and the relator is not entitled to a writ to enforce a right claimed under an unconstitutional act.   (*People* v. *Thompson*, 155 Ill. 451; *Parker* v. *Powell*, 133 Ind. 201–203.)   If the act of 1899 is invalid, the court must go back until it finds a valid one.   (*Board* v. *Blacker*, 92 Mich. 638, 653.)

By the Court, MASSEY J.:

This is an action by the state, on the relation of W. E. Winnie, the district attorney and an elector of Storey county, against the respondents, the board of county commissioners of said county, to compel them as such board to cause their clerk, by proper order, to issue the necessary notice of the ensuing general election for members of the state senate and members of the assembly under the apportionment act of 1891.

The relator contends that the subsequent act of 1899 is not based upon the population, as shown by the census taken under the act of congress in 1890, and is therefore unconstitutional and void.

It is shown by the petition, among other things, that the respondents, on the 6th day of August, 1900, refused the

request and demand of the relator to make the order for the election under the act of 1891, and did at that time make an order for the notice of election of senators and assemblymen as provided for by the act of 1899. Upon this petition the alternative writ was issued. The respondents by answer practically admit all the facts alleged in the petition.

By permission of court, Washoe and Lincoln counties have intervened and contest the relator's right to the peremptory writ. The interveners, among other matters, contend that the act of 1899 is valid, or, if invalid for the reason assigned by the relator, the act of 1891, upon which relator bases his right of representation in the legislature, and all other prior acts, contain the same or greater infirmities and inequalities, and are for like reasons invalid, and therefore, under settled rules, the court should deny the peremptory writ.

In 1891 the legislature passed "An act for the reapportionment of senators and assemblymen in the several counties of this state," by which Storey county was given a representation in the senate of two senators and a representation in the assembly of six assemblymen. By the same act Washoe county was given a representation of one senator and four assemblymen; Elko county, one senator and three assemblymen; Lincoln county, one senator and one assemblyman, and Humboldt county, one senator and two assemblymen. (Stats. 1891, p. 23.)

In 1899 the legislature amended the above act by which the representation of Storey county was reduced to one senator and four assemblymen. This amended act gave to Washoe county two senators, to Elko county four assemblymen, to Humboldt county three assemblymen, and to Lincoln county two assemblymen. (Stats. 1899, p. 121.)

The representation provided for the other counties of the state will be referred to as it may become necessary in the discussion of the question presented.

It is made the duty of the several boards of county commissioners, by section 4 of the act relating to elections, to cause their clerks to make out and send by mail to the registry agents of their respective counties at least twenty days before any general election notices of such election, the prescribed form of which, with other matters, requires that the

names of the offices to be filled shall be set out therein. (Comp. L., 1900, sec. 1588.)

The jurisdiction of this court to declare, in a proper case, an apportionment act invalid and unconstitutional is not questioned by the interveners, and is, as we believe, so well established as not to require discussion or citation of authorities to support it. The relator rests his contention as to the invalidity of the act of 1899 upon the declaration of section 13, article I, of the constitution, that "Representation shall be apportioned according to population," and upon the further provision of section 13, article XV, of the same instrument, which requires that the enumeration of the inhabitants of the state shall be taken under the direction of the legislature, if deemed necessary, in 1865, 1867 and 1875, and every ten years thereafter, and these enumerations, together with the census that may be taken under the direction of the congress of the United States in 1870, and every subsequent ten years, shall serve as the basis of representation in both houses of the legislature. These provisions of our organic law were intended to secure to the citizen an equal representation in making the laws of the state—one of the most sacred rights of citizenship—a right to be enjoyed equally by all the citizens of the state.

It is fundamental that every law passed by the legislature and approved by the governor is presumed to be constitutional; every intendment is in its favor and it should be sustained unless there are specific constitutional restrictions upon the power of the legislature, and the law is shown to be within those restrictions.

The relator urges that under the provisions of our constitution above cited, making the population ascertained by the census of 1890 (no census having been taken in 1895 under the authority of the legislature for that purpose) the basis of representation in making apportionments, and under the rule announced by the courts of other states, with constitutional provisions similar to those found in our constitution (holding that, in making representative apportionments, numerical equality of population, so far as practicable, is imposed by these provisions upon the legislature), if in making representative apportionments under these pro-

visions there should be such a wide and bold departure from this rule that it could not be justified by the exercise of any judgment or discretion, and that shows an intention on the part of the legislature to ignore and disregard the rule in order to promote some other object than a constitutional apportionment, then it becomes our duty to declare the act making such apportionment unconstitutional and void.

The following cases are cited in support of this contention: *Giddings* v. *Secretary of State*, 93 Mich. 1; *State* v. *Cunningham*, 53 N. W. (Wis.) 48; *State* v. *Cunningham*, 81 Wis. 440; *State* v. *Thompson*, 155 Ill. 451.

If our investigations were limited in these proceedings to ascertaining whether said act of 1899 is constitutional or not, then it might become necessary to say how far and to what extent the rule relied upon should apply; but the relator asks us to direct the respondents to make an order for the notice of election under the apportionment act of 1891, basing his right thereto upon the claim that the last-named act was founded upon the census of 1890, and is therefore valid.

As against this contention the interveners claim that said act of 1891, under which the relator as an elector bases his rights, contains grosser inequalities than the act of 1899, by which other citizens and electors of the state are deprived of their right of representation. If we are limited in our investigation to the act of 1899, and the destruction thereby of the rights of the relator, and the other citizens of Storey county, then is the relator's contention tenable. In the discussion of this question it is well to note at this time that there are not found in the articles of our constitution above cited, or in any of the other articles constituting that instrument, any restrictive or mandatory provisions whatever as to the time when and how often the legislature may make the representative apportionment, and it is too well established even to require discussion that, in the absence of such restrictive or mandatory provisions, the legislature may in its discretion make such apportionments as often as it so wills.

Returning, then, to the question as to how far and to what extent the court will go in its investigation of the acts of 1891 and 1899, and for what purpose, in proceedings of this kind, we find that the question is not entirely new, and there

are well-considered opinions of the courts of other states which throw much light and greatly assist in its correct determination.

In the case of *Parker* v. *State*—an action in *mandamus* to compel certain officers to take the necessary steps to hold the election of 1892 for senators and representatives under the apportionment act of 1879, and enjoin them from proceeding under the later act of 1891—Mr. Justice Coffey, of the Supreme Court of Indiana, discussing the precise question, uses the following language: "The chief object of this suit is to secure a decision upon the question of the constitutionality of the several acts of the general assembly referred to in the complaint. The question is presented in the same manner as the question was presented in the case of *Giddings* v. *Secretary of State, supra,* and in the case of *People* v. *Rice,* 135 N. Y. 473. The case of *Giddings* v. *Secretary of State* was an action to enjoin the secretary of state of the State of Michigan from taking the necessary steps to hold an election for state senators under an apportionment act approved in 1891, upon the ground that such act was unconstitutional, and to compel him by *mandamus* to proceed under an apportionment act approved in the year 1885. The case of *People* v. *Rice* was an action to enjoin the proper officers of the State of New York from proceeding to the election of senators and representatives under an apportionment act approved in the year 1892, upon the ground that such apportionment act was unconstitutional, and to compel them by *mandamus* to proceed to such election under an apportionment act approved in the year 1879. In each of these cases it seems not to have been doubted that the question of the validity of these several acts was presented in such a form as to require a decision upon that point. So in this case we are unable to perceive how the merits of the controversy are to be determined without a decision upon the question of the validity of the apportionment law of this state passed in the year 1891. Should we reach the conclusion that this act is not unconstitutional, it will not be necessary to pass upon the validity of the other acts, but, should we decide it invalid, then, in determining whether the appellee was entitled to the relief demanded, it would become necessary to pass upon the valid-

ity of the act of 1879, and, if that is found valid, the question of the constitutionality of the act of 1885 arises. If the act of 1891 and the act of 1879 are both unconstitutional, the appellee was not entitled to the relief sought, and the question of the validity of the act of 1885 is not involved in such a way as to require a decision upon its constitutionality."

Mr. Justice Elliott, in a separate opinion, uses the following language, which seems to us to be based upon sound reason: "The relator's complaint rests entirely upon the theory that the act of 1879 is valid, but, if he is right in the grounds upon which he assails the subsequent acts, that act is as bad as any of the others. Hence he has no standing in court, as he himself makes evident; and, when we have adjudged that he has no standing in court, we have decided all questions properly in the case, except jurisdictional ones, so that we cannot properly or authoritatively give judgment upon the validity of subsequent legislative enactments. The relator is involved in a fatal dilemma. If the acts of 1885 and 1891 are valid, he can have no relief. If they are void, so also is that of 1879. So that, whether the acts of 1885 and 1891 are valid or void, he can have no relief, and in either event he must utterly fail. The act of 1879 being void according to the relator's own theory, he has, as he himself demonstrates, no fulcrum capable of supporting a lever for the overthrow of subsequent legislative enactments; and hence all that we can decide, beyond jurisdictional questions, without transgressing settled principles, is that by his own averments his case is foundationless. Such a decision ends the case, and we cannot with propriety consider other questions, except jurisdictional ones, and certainly not high and grave constitutional questions. If the system which the relator avers is in conflict with the constitution is to be smitten to its death by the courts, it must be at the suit of one who assails all the legislative acts founded on that system; for it cannot be done at the suit of a party who demands that one of the acts resting on that system be upheld, and the others destroyed. The relator is the actor, and is bound to make a case rendering it imperatively necessary to decide the constitutional questions he assumes to present; and he must succeed upon the strength of his own case or fail, for he cannot succeed

upon the weakness of his adversaries. The act of 1879 is, according to his own theory, as full of evil as those he assaults, so that, if one goes down, so must all; and with the fall of the act of 1879 ends the relator's case. It would be strange indeed if one of several acts resting upon the same system should be upheld, and the others cast down—and stranger still if that should be done where the one rescued from condemnation contains more of evil than those condemned. One who secures or demands a benefit under an unconstitutional act is estopped to assert its invalidity." (*Parker* v. *State*, 133 Ind. 178.)

In the case of *Giddings* v. *Secretary of State*—an action in *mandamus* to restrain the giving notice of election of senators under the apportionment act of 1891, and to compel such notice to be given under the prior act of 1885—Mr. Justice Grant, of the Supreme Court of Michigan, says: "The petition prays that the respondent be directed to give notice of the election under the apportionment act of 1885. The constitutionality of this act is therefore directly involved in the controversy, unless it be held to be removed from the question by the fact that the people have acquiesced in its validity by acting under it for three elections. It must be conceded that this act is affected with the same constitutional infirmity as the act of 1891. It is unnecessary to determine whether such infirmity exists to an equal or greater or less degree. It is sufficient to say that it is not in accord with the constitution, and for the same reasons which apply to the act of 1891. It is therefore insisted with great force by the attorney-general that no election should be ordered under the former act, and he also urges in consequence that no relief can be granted. It is also said by him that, so far as he has examined other apportionment acts, they are all subject to the same objection. Under this reasoning, it would follow that, if the act of 1891 is held to be void, there is no remedy except the executive of the state decides to call a special session of the legislature. In such case there would be no apportionment law under which the people might elect a legislature. While the constitution requires the legislature to rearrange the district at the next session after each enumeration, yet we are of the opinion

that each apportionment act remains in force until it is sup-
planted by a subsequent valid act. It was my opinion that
the respondent should be directed to give notice under the
act of 1885, inasmuch as the people have acquiesced in its
validity by so long acting under it. But I yield my opinion
to that of my brethren, who are of the opinion that the
notice should be given under the law of 1881, the validity
of which is not here brought in controversy, unless the exec-
utive shall call a special session of the legislature." (*Gid-
dings* v. *Secretary of State*, 93 Mich. 9.)

In the same case Mr. Chief Justice Morse uses the follow-
ing language: "We have been obliged, under the issues here
made, to investigate but two apportionments—those of 1891
and 1885. Both are tarred with the same stick. We do not
care to go further, since there is a remedy in the hands of the
executive and legislature." (*Giddings* v. *Secretary of State*,
93 Mich. 13.)

The court in the above case declared both acts unconstitu-
tional, and ordered the notice of election to be given under
the act of 1885; but, as we shall presently show, the condi-
tions of legislation in this state are such as to preclude us
from going as far as the Supreme Court of Michigan.

In a prior case the same court held the act apportioning
representatives in 1891 void, and the act of 1885 also void;
and, upon an examination of the act of 1881, the same was
held to be valid, and ordered the notice of election given
under that act. (*Board of Supervisors* v. *Secretary of State*,
92 Mich. 638.)

In the case of *People* v. *Thompson*—an action involving the
constitutionality of an act making an apportionment of the
state into senatorial districts, approved June 15, 1893, and
to compel the issuance of notices of election under the appor-
tionment act of 1882—Mr. Justice Carter, of the Supreme
Court of Illinois, says: "Counsel for the appellants say
that the only question involved is the constitutionality of
the apportionment act of 1893, while counsel for appellee
insist that the validity of the act of 1882 is equally involved.
As the relator seeks relief under the act of 1882, on the
assumption that it is still in force as a valid and constitu-
tional act, it seems clear that, if the act of 1893 be found

invalid, the act of 1882 must be subjected to the same consti-
tutional test, and if it, also, be found invalid, judgment must
go against the relator to the same extent as if the act of 1893
should be found to be valid.   Indeed, a plausible argument
is made by counsel for appellee on the theory that it clearly
appears that both acts are subject to the same vice, and that
this court should proceed no further, but affirm the judgment
on the ground that, if one act be void, both are, and that,
even if relator should succeed in having the act of 1893 set
aside, he must still fail in his suit to establish the legal exist-
ence of the alleged Nineteenth district formed by the act of
1882; that the court can be called upon to determine the
constitutionality of a statute only when such determination
is necessary in the decision of a cause; and that it is unneces-
sary in this case, because, whether the relator succeeds or fails
in his attack on the act of 1893, he must lose his case—both
acts, if either should fall, going down together before the
same onset.   This view was taken by Mr. Justice Elliott, of
the Supreme Court of Indiana, in a separate opinion in a
similar cause in that court; but a majority of the court held
that the constitutionality of the apportionment acts there
brought in question was fairly presented for decision.   (*Par-
ker* v. *State*, 133 Ind. 178.)   While we recognize the well-
settled and long-established rule that courts will not go out
of their way to pass upon the constitutionality of a statute
assailed, but will decide the case on other grounds when
other grounds exist and the cause can be properly deter-
mined without considering whether the act be valid or
invalid, we are of the opinion that the question of the valid-
ity of the apportionment act of 1893 is not only fairly pre-
sented, but is necessarily involved in the decision of the case,
and that, if that act is found to be invalid, the question
whether or not the act of 1882 is unrepealed and constitu-
tional would then arise."   (*People* v. *Thompson*, 155 Ill. 460.)

In the above case, after an exhaustive discussion of the
constitutional questions involved, the court determined that
the act of 1893 was constitutional.

The following additional cases may also be consulted as
throwing some light upon the question:   *People* v. *Rice*, 135
N. Y. 473; *Baird* v. *Supervisors*, 142 N. Y. 527; *State* v.

*Campbell*, 48 Ohio St. 435; *Prouty* v. *Stover*, 11 Kan. 235; Opinion of Justices, 18 Me. 458.

We come now to a consideration of the alleged inequalities in the apportionment acts of 1891 and 1899, and in this connection we deem it advisable to say that it is unnecessary to express any opinion upon the suggested question as to whether our legislature has the power or authority, under the constitutional provisions cited, to determine the population from the number of votes cast at an election based upon so-called established ratio of votes to population, and to use the same as the basis of representation in making apportionments.

By the census taken under the act of congress of the United States in 1890, the entire population of the state was 45,761. Under the act of 1891, 3,000 of the population, as shown by the census of 1890, is approximately the unit of senatorial representation, and 1,500 is approximately the unit of representation in the assembly. By that act Churchill county, with a population of 703, has one senator, while Elko county, with a population of 4,794, and Washoe county, with a population of 6,437, and Ormsby county, with a population of 4,843, are each given but one senator. Nye county, with a population of 1,290, is given the same senatorial representation as Washoe, Elko and Ormsby counties. Churchill county, with the population above stated, has the same representation in the senate and assembly as Lincoln county, with a population of 2,446. Lyon county, with a population of 1,987, has the same senatorial representation as Elko, Washoe and Ormsby, and one more member of the assembly than Lincoln county with its population of 2,446. White Pine county has the same representation in senate and assembly, with a population of 1,721, as Lincoln, with the population above stated. Other inequalities might be pointed out, but we deem these sufficient for the purposes of the case. Without pointing out the specific inequalities under the amended act of 1899 based upon the same census, it is sufficient to say that, no matter upon what reasonable basis the unit of representation is estimated, nearly all of the infirmities of the act of 1891 are reënacted in the amended act of 1899. The equalization of represen-

tation of the counties of Elko, Washoe and Lincoln resulted in an injustice to Storey county, and carried with it many of the grossest vices of the act of 1891. The right of representation in the legislative department under the constitution is just as sacred to the electors of Lincoln or Washoe as to the electors of Storey; and, if the act of 1899 must fall because it deprives the electors of Storey county of that right, so must the act of 1891 fall because it deprives the electors of Washoe, Lincoln and other counties of the same high and sacred right.

If we could find some prior act containing the elements of that legislative equality contemplated by the rule upon which to base a judgment, as was found by the court in Michigan, and under like legislative conditions, the question would be easy of solution; but in looking back of the act of 1891, under the contention of the interveners, we are confronted with the proposition that there is no act of that date which could be based upon the census of 1890, and, so far as we have investigated, the act of 1881, in the language above quoted, "is tarred with the same stick." We are also met with the further obstacle that if we undertake to rest our decision upon acts prior to 1881, or even upon the constitutional apportionment, some counties would be entirely deprived of representation.

Further, if we declare these acts unconstitutional, with the near approach of the general election, at which all members of the assembly are to be elected, and a part of the members of the senate, we are again confronted with the question whether our decision might not, under certain other provisions of the constitution fixing the term of office of senators and assemblymen, deprive the state of all legislative action at the time fixed by the constitution.

Under these circumstances, and facing these conditions, we must rely upon general rules announced by this court—that it will never pass upon a constitutional question unless it is clearly involved, and a decision thereon is necessary to a determination of the case, and that this court, in the exercise of its discretion in proceedings in *mandamus*, will grant the peremptory writ only when the right sought to be protected is clear and undoubted. (*State* v. *LaGrave*, 22 Nev.

417; *State* v. *Meder*, 22 Nev. 265; *State* v. *Wheeler*, 23 Nev. 143.)

The act of 1891, upon which relator rests his right, is subject to the same objection as the act of 1899, which affects the rights of others, and is, according to his own theory, invalid, and as said by Mr. Justice Elliott, as above quoted, "By his own averments his case is foundationless."

Therefore, upon the showing made, and for the reasons given, the peremptory writ will be denied.