THE STATE OF NEVADA EX REL. HELEN HERR, ALFRED J. ALLEMAN, EMERSON F. TITLOW AND JOHN FRANSWAY, NEVADA STATE SENATORS, AND HELEN HERR, ALFRED J. ALLEMAN, EMERSON F. TITLOW AND JOHN FRANSWAY, NEVADA STATE SENATORS, INDIVIDUALLY, PETITIONERS, *v.* PAUL LAXALT, GOVERNOR OF THE STATE OF NEVADA, AND THE CLARK COUNTY BOARD OF COUNTY COMMISSIONERS, CLARK COUNTY, NEVADA, AND DARWIN W. LAMB, ROBERT T. BASKIN, WILLIAM H. BRIARE, LOU F. LAPORTA AND JAMES G. RYAN AS COUNTY COMMISSIONERS, CLARK COUNTY, NEVADA, RESPONDENTS.

No. 5568

June 5, 1968                                   441 P.2d 687

*Vargas, Bartlett & Dixon,* of Reno, for Petitioners.

*Harvey Dickerson,* Attorney General, and *Frank W. Daykin,* Special Deputy Attorney General, for Respondent Paul Laxalt, Governor of the State of Nevada.

*George E. Franklin, Jr.,* District Attorney, for Respondent Board of County Commissioners of Clark County, as such board and as individual commissioners.

## OPINION

By the Court, MOWBRAY, J.:

This is a proceeding in mandamus brought for the purpose of testing the constitutionality of the reapportionment statute enacted by the Nevada Legislature in 1965 pursuant to the order of the United States District Court for the District of Nevada.[1]

In compliance with the federal court order, the Nevada Legislature in special session provided for the election of both houses from districts fashioned according to population. This especially affected the Senate, which up to that time had consisted of one member from each county. The reapportionment act[2] therefore provided that the term of every incumbent Senator should expire on the day following the general election in 1966, provided for the election of an entire new Senate in that year, and further provided for the allotment of 2- and 4-year terms as set forth in the margin.[3] This act was approved in toto by the federal court.[4]

---

[1]Dungan v. Sawyer, 250 F.Supp. 480 (1965).

[2]Stats. Nev. 1965 Special Session, ch. 2.

[3]As amended, NRS 218.030 provides, in part:

"3. The senators so elected shall, on a day to be fixed by the secretary of state which shall be subsequent to the canvass of the vote by the supreme court and prior to the convening of the next general or special session of the legislature, meet in the office of the secretary of state for the purpose of drawing lots to divide their initial terms into lengths of 2 and 4 years. The secretary of state shall prepare the lots and conduct the drawing in compliance with the following subsections.

"4. The eight senators from Clark County shall draw lots to select four whose term of office shall be 4 years from the day next after their election and four whose term of office shall be 2 years from such day.

"5. The six senators from Washoe County shall draw lots to select three whose term of office shall be 4 years from the day next after their election and three whose term of office shall be 2 years from such day.

"6. The six senators from the single-senator districts shall draw lots to select three whose term of office shall be 4 years from the day next after their election and three whose term of office shall be 2 years from such day.

"7. The secretary of state shall then certify the results of the drawing to the officials whose duty it is under subsection 1 to issue the respective certificates of election, and these officials shall issue such certificates showing the length of term accordingly.

"8. Per diem allowances and travel expenses, as provided by law for senators, for attendance at the meeting provided in subsection 3 shall be a proper charge against the legislative fund."

[4]Dungan v. Sawyer, 253 F.Supp. 352 (1966).

Petitioners were elected to the Senate in 1966,[5] drew 2-year terms, and served through the 1967 regular session and the 1968 special session. At the close of the latter, faced with the prospect of another campaign, petitioners asked this court to order the respondents to issue them new certificates of election running from 1966 through the general election of 1970, on the ground that the true length of their terms is fixed by the Constitution at 4 years.

Counsel have briefed and argued collaterally the complex questions arising from (1) petitioners' failure to protest earlier the statutory provision for 2-year terms and (2) the tacit approval of this provision by the federal court; but both sides have invited this court to reach directly the constitutional question. Because of its importance and possible effect on future apportionments of the Nevada Legislature, we have chosen to do so. We therefore intimate no opinion concerning the possible effect of either of the factors mentioned in this paragraph upon petitioners' rights.

Petitioners have taken as their fundamental premise that article 17 of the Constitution must be disregarded in ascertaining the proper length of senatorial terms. This is so, they contend, because it is designated "Schedule" in the Constitution and because a member of the Constitutional Convention[6] said that, "merely temporary matters, which * * * are not intended to be permanent features of the instrument, should have their place in the Schedule." To this effect, they have cited a line of authorities beginning with the Richmond Mayoralty Case, 19 Gratt. 673, 712 (Va. 1870).

We note, however, (1) that these authorities construe constitutions in which the entire Schedule is preceded by an introductory clause, "That no inconvenience may arise [from the particular transition] * * * it is hereby declared that"[7] or words of like effect, and (2) that the earliest of these decisions dates from 1870, 6 years after the adoption of the Nevada Constitution. The usage prior to 1864 was highly variable. The oldest constitutions now in force, those of Massachusetts (1780) and New Hampshire (1784), have no Schedules. The Constitution of California, adopted in 1849, had a Schedule (not numbered as an article of the Constitution), but it contained no such introductory clause as that quoted above. Such

[5]Miss Herr and Mr. Alleman had previously served in the Assembly; Messrs. Titlow and Fransway had previously represented individual counties in the Senate.

[6]Mr. Nourse. Marsh, Nevada Constitutional Debates & Proceedings 610, 611 (1866).

[7]Constitution of Virginia, as revised in 1870.

a clause was used in section 3, where it apparently referred only to the carrying-over of public officers. The Constitution of Ohio, as revised in 1851, had a Schedule (likewise not numbered as an article), but contained no such clause introductory either to the entire Schedule or to any section.

In the Constitution of Nevada, such a clause is contained in article 17 within section 1, which otherwise refers to the continuation of law suits. Whether or not we attach controlling importance to the placement of this clause, it is clear that there was no settled practice, let alone judicial interpretation, as to the use or effect of a Schedule to be read into its adoption.

Nor do the later decisions predominantly give to a Schedule only temporary effect. In State v. Esser, 115 N.W.2d 505 (Wis. 1962), the court distinguished in the Schedule between sections "of obviously temporary significance" and a section which perpetuated the common law until changed by the legislature. It is significant that the Wisconsin Constitution (1) was adopted in 1848, prior to those of California, Ohio (in the revision cited), and Nevada; (2) numbers the Schedule as an article; and (3) sets forth as the first four sections of the Schedule language identical to the corresponding Nevada sections.

The court further declared: "The general rule is that a provision in the Schedule inconsistent with one embodied in the Constitution itself must yield to the latter." This is identical in substance to the familiar rule that in construing irreconcilable statutes the later in time prevails. This rule carries as a corollary that the statutes must be reconciled if possible in order to give effect to all the language. Ex parte Smith, 33 Nev. 466, 111 P. 930 (1910).

The Wisconsin Supreme Court quoted its rule from State ex rel. Aquamsi Land Co. v. Hostetter, 79 S.W.2d 463 (Mo. 1934). There, the court did in effect apply the rule and corollary of statutory construction which we have noted. It held that a Schedule provision relating to courts of common pleas was "intended * * * to be read in connection with and as a part of section 1 of article 6 vesting the judicial power of the state." Id. at 467. This integration was crucial, for only by virtue of it did the common pleas court whose jurisdiction was in question survive the subsequent repeal of the Schedule provision itself.

We are not called upon in this case to give continuing vitality to a repealed provision, but we do conclude that the Schedule of the Nevada Constitution, article 17, has continuing vitality

as a part of the Constitution, insofar as its provisions may still be made applicable.

The Constitution of Nevada, therefore, contains three sections which bear directly upon the length of senatorial terms.[8] Section 4 of article 4 is clearly the general rule. Section 9 of article 17 applies equally clearly to a single instance, the allotment of the terms of the Senators first elected under the Constitution. The dispute, therefore, centers on section 10 of article 17.

The familiar rule already noted, that effect must be given to every part of the instrument, has often been applied by this court to the Constitution of Nevada. Youngs v. Hall, 9 Nev. 212 (1874); State ex rel. Aude v. Kinkead, 14 Nev. 117 (1879); Marshall v. Warden, 83 Nev. 442, 434 P.2d 437 (1967). Section 9 of article 17 is sufficient in itself to provide for the initial allotment of senatorial terms. If, therefore, section 10 is to be given effect, it must do something more. We believe the significant words are "and thereafter * * * the terms of Senators shall be allotted by the Legislature in long and short terms as hereinbefore provided; so that one half the number as nearly as may be, shall be elected every Two Years."

Section 9 does not require any action by the Legislature, but rather by the Senators as a group. The words, "as hereinbefore provided," therefore, do not logically refer to the single instance of action by a different entity, but rather explain where the length of the "long and short terms" is defined,

---

[8]Art. 4, § 4: "Senators shall be chosen at the same time and places as members of the Assembly by the qualified electors of their respective districts, and their term of Office shall be four Years from the day next after their election."

Art. 17, § 9: "The Senators to be elected at the first election under this Constitution shall draw lots, so that, the term of one half of the number as nearly as may be, shall expire on the day succeeding the general election in A.D. Eighteen Hundred and Sixty Six; and the term of the other half shall expire on the day succeeding the general election in A.D. Eighteen hundred and sixty eight, Provided, that in drawing lots for all Senatorial terms, the Senatorial representation shall be allotted, so that in the Counties having two or more Senators, the terms thereof shall be divided as nearly as may be between the long and short terms."

Art. 17, § 10: "At the general election in A.D. Eighteen hundred and Sixty Six; and thereafter, the term of Senators shall be for Four Years from the day succeeding such general election, and members of Assembly for Two Years from the day succeeding such general election, and the terms of Senators shall be allotted by the Legislature in long and short terms as hereinbefore provided; so that one half the number as nearly as may be, shall be elected every Two years."

which is in section 9. We therefore interpret section 10 as conferring a continuing authority upon the Legislature for the purpose specified.

Historically, the Nevada Legislature has so interpreted it. In 1871,[9] 1873,[10] and 1875,[11] the Legislature provided that new counties respectively entitled to two Senators should initially have one for 4 years and one for 2 years. In 1873, the Legisalture further enacted a general statute[12] which provided that whenever a county became entitled to two Senators and the terms had not been staggered by the Legislature, the Senate should allot them by a drawing. The importance of contemporaneous construction of a constitutional provision by the Legislature has long been recognized by this court. State ex rel. Ash v. Parkinson, 5 Nev. 15 (1869); Hendel v. Weaver, 77 Nev. 16, 359 P.2d 87 (1961).

Support for the action of the 1965 Special Session in prescribing 2-year terms for certain Senators is also to be found in the contemporary decisions of other state and federal courts concerning legislative reapportionment. In Utah, the action of the Legislature in this respect[13] was apparently never brought before a court. In California, the reapportionment act, which without express constitutional authority provided for the election of Senators for 2-year terms from odd-numbered districts, was approved without discussion of this point.[14] Similar action was taken in Ohio by the State Reapportionment Board, again without express constitutional authority, and approved without discussion.[15] Finally, in Schaefer v. Thomson, 251 F.Supp. 450 (1965), a federal court itself ordered that the initial terms of members of the completely new Senate to be elected in 1966 be allotted into lengths of 2 and 4 years in a manner very similar to that provided in Nevada by the 1965 act. This decision was affirmed by the Supreme Court of the United States without opinion, per curiam, as Harrison v. Schaefer, 383 U.S. 269 (1966).

None of the state constitutional provisions involved in these cases or others cited in the briefs is identical with the Nevada constitutional provisions above cited—state constitutional provisions seldom are identical. What is important is that each of the bodies responsible for the reapportionment recognized

[9]Stats. Nev. 1872, ch. 62, at 131.

[10]Stats. Nev. 1873, ch. 4, at 50.

[11]Stats. Nev. 1875, ch. 75, § 2.

[12]Stats. Nev. 1873, ch. 115, at 190.

[13]Laws of Utah 1966 First Special Session, ch. 5.

[14]Silver v. Brown, 409 P.2d 689 (Cal. 1966).

[15]State ex rel. King v. Rhodes, 228 N.E.2d 653 (Ohio 1967).

the importance of staggered terms in the State Senate, and provided for it. This principle, which is designed to assure continuity of experience in the upper house, dates from the inception of the United States Constitution,[16] and has been adopted by most of the States. Its significance in conferring power upon a Legislature to provide shortened terms in order to balance the classes of Senators is expressly noted in State ex rel. Williams v. Meyer, 127 N.W. 834 (N.D. 1910); State ex rel. Christensen v. Hinkle, 13 P.2d 42 (Wash. 1932); and Selzer v. Synhorst, 113 N.W.2d 724 (Iowa 1962).

We hold, therefore, that the Legislature has power to provide for the allotment of 2-year terms to members of the Senate when, but only when, such action is necessary to provide for the election of one-half of their number every 2 years. Therefore, these proceedings are dismissed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.

---

[16]See The Federalist, No. 63 (Madison) and No. 64 (Jay).