THE STATE OF NEVADA, ON THE RELATION OF ROY D. PAGNI, ROBERT F. RUSK, HOWARD F. McKISSICK, SR., DWIGHT A. NELSON AND JOE COPPA, MEMBERS OF AND CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, STATE OF NEVADA, PETITIONERS, v. H. K. BROWN, COUNTY CLERK OF WASHOE COUNTY, STATE OF NEVADA, AND EX OFFICIO CLERK OF THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, STATE OF NEVADA, RESPONDENT.

No. 6892

June 7, 1972                    497 P.2d 1364

*Russell W. McDonald,* of Reno, for Petitioners.

*Robert E. Rose,* District Attorney, and *John Frankovich,* Deputy District Attorney, Washoe County, for Respondent.

## O P I N I O N

By the Court, THOMPSON, J.:

The purpose of this original proceeding in mandamus, instituted by the State on relation of the Board of County Commissioners of Washoe County, is to determine the constitutionality of NRS 244.013 as amended by Stats. Nev. 1971, ch. 649, p. 1528.[1] The County Clerk of Washoe County has refused to attest Washoe County Ordinance No. 186 which purports to create Washoe County Commissioner districts based on population in compliance with the Local Government Reapportionment Law, Stats. Nev. 1971, ch. 648. The predicate for his refusal to so attest is that NRS 244.013, as amended by Stats. Nev. 1971, ch. 649, p. 1528, is constitutional with the result that proposed Washoe County Ordinance No. 186 is void.

1. NRS 244.013 (Stats. Nev. 1960, ch. 85, p. 91) provides that in each county having a population of 50,000 or

---

[1]The remedy is appropriate. State ex rel. Herr v. Laxalt, 84 Nev. 382, 441 P.2d 687 (1968); McDonald v. Beemer, 67 Nev. 419, 220 P.2d 217 (1950); State v. Stoddard, 25 Nev. 452, 62 P. 237 (1900). Since a prompt and final determination is significant to prospective candidates, the public, the taxpayers and the electors of Washoe County, we accepted this proceeding rather than to refer the petitioners to the district court.

more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, five county commissioners shall be elected: two from among the residents of the incorporated city within the county at which the county seat is located by the residents of such city; one from among the residents of the other incorporated cities in the county by the residents of such cities; one from among the residents of the unincorporated areas of the county by the residents of such areas; and one at large within the county.[2]

The official 1970 census of population for Nevada provided by the Bureau of Census determined that Washoe County had a population of 121,068, the City of Reno, 72,863, and the City of Sparks, 24,187. The City of Reno is the County Seat of Washoe County and the specially chartered cities of Reno and Sparks are the only incorporated cities in Washoe County. Stats. Nev. 1903, ch. 102, as amended; Stats. Nev. 1949, ch. 180, as amended. Consequently, when the official 1970 census figures are applied to NRS 244.013, as amended in 1971, we find that two county commissioners are to be elected from the City of Reno having a population of 72,863, one commissioner is to be elected from the City of Sparks having a population of 24,187, one commissioner is to be elected from the unincorporated area of the county having a population of 24,018, and one commissioner at large.

This plan involves one multi-member district and one floterial district. The disparity, expressed in percent of the ideal representation is portrayed below.[3] Accordingly, the petitioners

---

[2]When first enacted the statute applied to Clark and Washoe Counties since all other Nevada counties fell below the required 50,000 population. In 1971, the Legislature amended NRS 244.013 to remove Clark County therefrom. See: Stats. Nev. 1971, ch. 649, § 2, p. 1529. NRS 244.013, by reason of the 1971 amendment, applies to each county having a population of 100,000 or more, but less than 200,000. The 1970 census determined that Clark County had a population of 273,288 and Washoe County, 121,068. Accordingly, Clark County was automatically eliminated from the operation of NRS 244.013. That statute now applies only to Washoe County. This classification according to population is constitutionally permissible. State v. Donovan, 20 Nev. 75 (1887).

| [3]District Number | Population | Number of Commissioners | Percent Disparity |
|---|---|---|---|
| 1. Reno | 72,863 | 2 | —13.536 |
| 2. Sparks | 24,187 | 1 | +20.110 |
| 3. Rural | 24,018 | 1 | +20.814 |
| 4. Entire County | 121,068 | 1 | |

Positive entries indicate overrepresentation, and negative, underrepresentation.

contend that the inhabitants of the City of Reno are not properly represented because of constitutionally impermissible population variances. The respondent urges that the variances are within permissible limits.[4] We turn to consider this major issue.

2.   In Baker v. Carr, 369 U.S. 186 (1962), the United States Supreme Court ruled that the allegations of a denial of equal protection due to legislative malapportionment presented a justiciable issue. The Court apparently believed that there existed no effective alternative to accepting jurisdiction since legislative abnegation of responsibility maintained rural political control over a vastly larger urban population. The following year, that Court proclaimed the "one man, one vote" concept. Gray v. Sanders, 372 U.S. 368 (1963). The Court stated: "How then can one person be given twice or ten times the voting power of another person in a statewide election merely because he lives in a rural area or because he lives in the smallest rural county? Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of 'we the people' under the Constitution visualizes no preferred class of

---

[4]Proposed Washoe County Ordinance No. 186 provides for five non-overlapping single seat commissioner districts. The disparity in percent of ideal representation is:

| District Number | Population | Number of Commissioners | Percent Disparity |
|---|---|---|---|
| 1. Reno | 24,197 | 1 | +0.069 |
| 2. Reno | 24,168 | 1 | +0.189 |
| 3. Reno | 24,286 | 1 | —0.298 |
| 4. Sparks | 24,272 | 1 | —0.241 |
| 5. Balance of County | 24,145 | 1 | +0.284 |

Sec. 4(1) of the Local Government Reapportionment Law, 71 Stats. ch. 648, p. 1527, pursuant to which the County Commissioners voted for Ordinance No. 186, directs the governing board of a local governmental unit whose members are chosen by popular vote to divide the geographical area it serves into the number of election districts which is identical with the number of members serving on such board—such division to be accomplished before January 1, 1972. This directive, however, is inapplicable if the law otherwise has made specific provision for the election of county commissioners. NRS 244.013 as amended does so specifically provide and must be followed if constitutional. However, if NRS 244.013 as amended is unconstitutional and void, it is the same as no law at all, State v. Malone, 68 Nev. 36, 43, 231 P.2d 599 (1951), and the directive of the Local Government Reapportionment Law would be operative. We are not here concerned with the constitutionality of Ordinance No. 186.

voters but equality among those who meet the basic qualifications." Id. at 379, 380.

This standard was extended to state legislative apportionment by Reynolds v. Sims, 377 U.S. 533 (1964). The Court wrote: ". . . [W]e mean that the Equal Protection Clause requires that a state make an honest and good effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement." Id. at 577.

Finally, equal protection principles were extended to local government apportionment. Avery v. Midland County, 390 U.S. 474 (1968). "The Equal Protection Clause reaches the exercise of state power however manifested, whether exercised directly or through subdivisions of the State." Id. at 479. "We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographical area served by the body." Id. at 484, 485. This basic theme was reiterated in Hadley v. Junior College District, 397 U.S. 50 (1970), ". . . whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." Id. at 56. The Court did note, however, that "if the deviation from equal apportionment . . . resulted from a plan that did not contain a built-in bias in favor of small districts, but rather from the inherent mathematical complications in equally apportioning a small number of trustees among a limited number of component districts," a different question would be presented. Id. at 58. Other language in the *Hadley* opinion suggests that local government may enjoy greater flexibility in apportionment than national or state governments.

3. In the matter before us the deviation from numerical equality under NRS 244.013 ranges from an underrepresentation of approximately 13 percent in Reno to an overrepresentation of approximately 20 percent in Sparks and the unincorporated area. Neither from the record before us nor

from the wording of the statute or its preamble may we ascertain a reason for that deviation. Local needs and local problems are not mentioned. We know only that the deviation from equal apportionment automatically discriminates in favor of Sparks and the unincorporated area. Although mathematical exactness or precision may not be required, the Supreme Court has not tolerated a deviation from numerical equality of the degree here presented.[5] The burden is upon the state to justify each variance. Kirkpatrick v. Preisler, 394 U.S. 526, 531 (1969). As herebefore noted, justification is absent in this case.

We, therefore, hold that NRS 244.013 as amended by Stats. Nev. 1971, ch. 649, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and direct that a peremptory writ of mandamus issue directing the respondent County Clerk to attest Washoe County Ordinance No. 186.

ZENOFF, C. J., and BATJER, MOWBRAY, and GUNDERSON, JJ., concur.

---

[5](a) Congressional redistricting: Variations of 3.13 percent above and 2.84 percent below mathematical ideal invalidated. Kirkpatrick v. Preisler, 394 U.S. 526 (1969). Variances of 6 percent above and below perfect equality rejected. Wells v. Rockefeller, 394 U.S. 542 (1969).

(b) State legislature: Deviation up to 18 percent invalidated. Swann v. Adams, 385 U.S. 440 (1967); variations up to 14 percent rejected. Kilgarlin v. Hill, 386 U.S. 120 (1967).

(c) The Supreme Court of California in Calderon v. City of Los Angeles, 481 P.2d 489 (Cal. 1971), invalidated a city charter provision allowing variations of 10 percent from the ideal district figure.